## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **NATHANIEL DANIELS,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **Civ. Act. No.  05-2455 (GK)** |
| | ) | |
| **BRUCE JAMES, PUBLIC PRINTER** | ) | |
| **U.S. Government Printing Office,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, Public Printer, United States Government Printing Office, respectfully moves, pursuant to Fed. R. Civ. 56, for entry of summary judgment in Defendant's favor.

In support of this motion, the Defendant respectfully refers the Court to the Statement of Material Facts Not in Dispute, and the Memorandum of Points and Authorities in Support thereof, attached hereto.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building

555 4th Street, NW - Civil Division
Rm. 4-4808
Washington, D.C.  20530
(202) 305-1334

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **NATHANIEL DANIELS,** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| **v.** ) | **Civ. Act. No. 05-2455 (GK)** |
| ) | |
| **BRUCE JAMES, PUBLIC PRINTER** ) | |
| **U.S. Government Printing Office,** ) | |
| ) | |
| **DEFENDANT.** ) | |

---

### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

NONSELECTIONS

1.      On February 25, 2002, the Defendant, U.S. Government Printing Office (GPO) hired Plaintiff, Mr. Nathaniel Daniels  (DOB: 1947) to be a Grade 1 Printing Plant Worker (PPW-1) in the Delivery Section of GPO's Production Department.  Def. Exhibit 1 (The SF-50 hiring Daniels in 2002).  Plaintiff was a probationary employee from February 25, 2002 through February 24, 2003.  Plaintiff's duties for the PPW-1 position included helping drivers of delivery vehicles on delivery runs by unloading and carrying materials to their drop off points.  Def. Exhibit 2.

2.      On August 30, 2002, Defendant GPO posted Vacancy Announcements to fill 4 vacant PPW-5 Motor Vehicle Operator positions, GPO Vacancy Announcement (Announcement) Nos. 02-242 and 02-243.  Def. Exhibit 3.  The duties of a PPW-5 Motor Vehicle Operator include, among other things, "driv[ing], load[ing] and unload[ing] light delivery trucks capable of loads up to one ton" and "deliver[ing] and pick[ing] up a variety of printed materials, proofs, and special items between [the GPO] and various government and commercial buildings throughout the Washington, DC metropolitan area.  Id.

3.      There was one PPW-5 Motor Vehicle Operator position advertised under Announcement No. 02-243 and three PPW-5 Motor Vehicle Operator positions advertised under Announcement No. 02-242.  Id.

4.      On or about October 2, 2002, Terrence Dudley  the Delivery Section's Chief, conferred with his Deputy, Paul Kirby about dividing between each other the selection decisions to fill the 4 vacancies.  Def. Exhibit 4 (Terrence Dudley's 2007 Affidavit), Def. Exhibit 5 (Paul Kirby's 2007 Affidavit).

5.      Mr. Dudley selected two candidates, Mr. Lamar Gamble (DOB: 1946) and Ms. DeShawn McMillan (DOB: 1971).  Def. Exhibit 4.  Mr. Dudley concluded that Plaintiff did not have comparable work experience to either Mr. Gamble or Ms. McMillan.  Id.

6.       Mr. Gamble is slightly older than Plaintiff.  Def. Exhibit 20.  Mr. Gamble was 56 at the time of the selection.  Id.

8.      Mr. Kirby selected two candidates, Mr. Christopher Silas and Derron Williams. Def. Exhibit 6.  Mr. Kirby's selection criteria focused on experience driving delivery vehicles in the Washington DC region, and experience physically loading and unloading heavy materials for delivery.  Id.

9.       On or about October 16, 2002, Messrs. Dudley and Kirby signed the selection certificates recommending Ms. McMillan and Messrs. Silas, Williams, and Gamble for Announcements Nos. No. 02-242 and 02-243. Def. Exhibit 12.

EEO COMPLAINTS

10.     Plaintiff timely filed a formal Agency Complaint of Discrimination, on December 31, 2002, contending that he was discriminated against solely because of age (DOB: 1947), when he was not selected for the position of Motor Vehicle Operator, under Announcements 02-242, 02-

243. Def. Exhibit 19.

11.     Plaintiff timely filed formal Complaint, GPO No. 03-21 on April 29, 2003.  Def. Exhibit

14 (Formal EEO Complaint 03-21).  Plaintiff contended that he was discriminated against in

reprisal for prior protected activity when he was: 1) singled out and questioned by his

supervisors on December 19, 2002; 2) not permitted to work overtime on February 1 and 2,

2002, despite previously being scheduled for overtime on those dates; and 3) issued a removal

proposal on February 21, 2003. Id.

FEBRUARY 2003 OVERTIME

12.     Overtime work for the weekend of February 1 and 2, 2003 was assigned by Mr. Dudley.

Def. Exhibit 4.  Employees working on Plaintiff's shift (5:00AM to 1:30PM) were scheduled to

work overtime on Saturday, February 1, 2003, delivering the Congressional Record.  Def.

Exhibit 4.  Employees from a later shift were assigned to work overtime on Sunday, February 2,

2003 delivering copies of the federal budget. Def. Exhibit 4.

13.     On Friday, January 31, 2003, Mr. Dudley alerted all the employees scheduled to work

overtime on Saturday (including Plaintiff) that they were not to report for their scheduled

overtime work on February 1 because the Congressional Record was not ready for delivery.  Def.

Exhibit 4.  The overtime assignments for the employees scheduled to work on Sunday, February

2, 2003, were not changed. Def. Exhibit 4.  Despite being directed not to report for overtime

during the upcoming weekend, Plaintiff came to the worksite on February 2 – which was not the

date that employees from his shift were scheduled to work overtime - and insisted on working

overtime.  Def. Exhibit 4.  Mr. Dudley ordered Plaintiff to leave the worksite.  Def Exhibit 4.

PROPOSED REMOVAL

14.     On or about February 4, 2003, and without authorization from his supervisors, Plaintiff

set up office partitions and office furniture in the rear of the delivery platform for he and his friends to use during breaks from work.  Def. Exhibits 4, 13 (Dudley's 2/5/03 Memorandum to employee relations justifying Daniels' removal), 16 (Removal Letter signed by Schwenk). However, the partitions and furniture were set up in a work area where forklifts frequently operate, creating a work hazard.  Def. Exhibit 4, 13, 16.

15.     On February 5, 2003, Mr. Dudley learned from Plaintiff's Work Leader, Mr. Gerald Simms, about the partitions and that Plaintiff set them up and placed furniture in the partitioned area.  Def. Exhibits 4, 13, 16. Mr. Dudley directed Mr. Simms to have Plaintiff  remove the partitions and furniture.  Def. Exhibits 4, 13, 16.  Thirty minutes later, Mr. Dudley noted that the partitions and furniture remained in place.  Id.  Accordingly, he again directed Mr. Gerald Simms to tell Plaintiff to remove the partitions and furniture. Id.  Mr. Simms conveyed this instruction to Plaintiff, but after returning from lunch and seeing the partitions and furniture still unmoved, Mr. Dudley asked Plaintiff to report to his office. Id.  Mr. Dudley directed Plaintiff to remove the partitions and furniture. Id.  Plaintiff agreed to do so and then left Mr. Dudley's office. Id.

16.     The following morning of February 6, 2003, Mr. Dudley again noted that the partitions and furniture had not been removed.  Id.  Instead of removing the items as promised, Plaintiff and 3 other employees (Messrs. Walter Lancaster, Howard Shade, and Ronald Woody) requested that Mr. Dudley allow them to keep the partitions and furniture in place. Id.  Mr. Dudley denied the employees' request because the items posed a safety hazard and ordered the partitions and furniture removed.  Id.  Mr. Dudley then directed Plaintiff and Messrs. Lancaster, Shade, and Woody to remove the partitions and furniture, but they did not acknowledge this instruction.  Id. Ultimately, the partitions and furniture were removed only by Mr. Shade. Id.

17.     Because Plaintiff disobeyed Mr. Dudley's orders, Mr. Dudley concluded that Plaintiff failed to demonstrate as a probationary employee that he was suitable for continued employment by GPO.  Mr. Dudley therefore proposed that Plaintiff be removed from his position for improper conduct and for creating disorder and confusion in the Delivery Section.  Id.

18.     On February 21, 2003, Mr. Robert Schwenk, then Acting Production Manager, concurred with Mr. Dudley and directed that Mr. Daniels be removed from employment at GPO during his probationary period.  Def. Exhibit 16.  Mr. Schwenk's removal letter stated that "[t]he probationary period is the final essential evaluation of the examination process.  It is the time in which an employee has the opportunity to demonstrate, through actual performance and/or conduct, their acceptability and suitability for continued employment.  During this probationary period [Plaintiff] demonstrated [his] unsuitability for continued employment." Id.

19.     Sometime after Mr. Schwenk signed the February 21, 2003 removal letter, Ms. Lueann Green, former Director of GPO's Office of Employee Relations and Programs, reviewed the letter and noted that it erroneously made the effective date of Plaintiff's removal to be on February 25, 2003, one day after the expiration of his probationary period. Def. Exhibit 17.

20.     Ms. Green does not know why the February 21, 2003 removal letter contained this error. Def. Exhibit 16.  After this erroneous date came to her attention, Ms. Green believed she had no alternative but to cancel the removal and reinstate Plaintiff to employment at GPO with back pay.  Id.  Accordingly, Ms. Green's office generated a letter dated April 9, 2003, informing him that he would be reinstated. Id.

21.     Plaintiff's removal was rescinded on April 9, 2003, and Plaintiff was directed to return to duty on April 14, 2003.  Def. Exhibit 18.  Plaintiff received back pay from February 25, 2003 to April 14, 2003, the entire period he was not working at GPO. Id.

5

22.    The removal penalty for the misconduct cited in the February 21, 2003 removal letter was changed to a verbal warning because Messrs. Lancaster, Shade, and Woody only received verbal warnings for the incident involving the partitions.  Def. Exhibit 5.

23.    GPO issued a Final Agency Decision (FAD) on November 18, 2005 finding no discrimination.  Def. Exh. 15.

23.    Plaintiff filed his civil complaint in U.S. District Court on December 27, 2005.  See Court PACER Computerized Docket at Record (R.)1.

/s/
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th Street, NW - Civil Division
Rm. 4-4808
Washington, D.C.  20530
(202) 305-1334

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATHANIEL DANIELS,              )
                                )
            **PLAINTIFF**        )
                                )
        **v.**                  )        **Civ. Act. No.  05-2455 (GK)**
                                )
**BRUCE JAMES, PUBLIC PRINTER**  )
**U.S. Government Printing Office,**  )
                                )
            **DEFENDANT**        )


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND**

Plaintiff alleges age discrimination pursuant to the Age Discrimination in Employment

Act of 1967, (ADEA) as amended, 29 U.S.C. § 621 et seq., race and gender discrimination

pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.,

and retaliation due to previous EEO activity.  The Court should grant the Defendant's Motion for

Summary Judgment because Plaintiff has failed to state a prima facie case of retaliation, the

Agency has articulated legitimate, non-discriminatory reasons for all of its actions; and the

Plaintiff can offer no proof that those reasons are pretext for discrimination or retaliation.  In

addition, Plaintiff has failed to exhaust his administrative remedies with respect to any Title VII

claim based upon his race and gender.  Accordingly, judgment should be entered in favor of the

Defendant.

**ARGUMENT**

I.    **STANDARD OF REVIEW**

    A.    **Summary Judgment**

Summary judgment is appropriate when the record shows that no genuine issue exists as

to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27
F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists,
the Court must view all facts, and reasonable inferences drawn therefrom, in the light most
favorable to the non-moving party.  Matsushita, 475 U.S. at 587.  The mere existence of a factual
dispute, however, will not defeat summary judgment.  The non-moving party must show that the
dispute is genuine and material to the case.  That is, the factual dispute must be capable of
affecting the substantive outcome of the case and supported by sufficiently admissible evidence
that a reasonable trier of fact could find for the non-moving party.  Anderson, 477 U.S. at 247-
48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring
the non-moving party is "merely colorable, or is not significantly probative, summary judgment
may be granted."  Id. (citing Anderson, 477 U.S. at 249-50.  "[A] complete failure of proof
concerning an essential element of the non-moving party's case necessarily renders all other facts
immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'"  Celotex
Corp., 477 U.S. at 323 (citations omitted).

    Mere conclusory allegations are not enough to survive a motion for summary judgment.
Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C.
1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which merely
recites conclusory allegations will not defeat summary judgment.  See Lujan v. National Wildlife
Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory
allegations of the complaint or answer with conclusory allegations of an affidavit.").  As the
Supreme Court has instructed:  "the plain language of Rule 56(c)) mandates the entry of

summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

      **B.**    **Discrimination Claim**

      In order to survive summary judgment, a plaintiff must produce some evidence to show that the Agency intentionally discriminated against him. Plaintiff may proceed using direct evidence of discrimination or under the now-familiar formula enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). No direct evidence of intentional discrimination or retaliation exists in this case. Accordingly, to prove his case, Plaintiff must meet all the elements of the McDonnell Douglas formula. See Barnette v. Chertoff, 453 F.3d 513, 515 (D.C. Cir 2006) (applying framework to ADEA claims); Carter v. George Washington University, 387 F.3d 872 (D.C. Cir. 2004).

      Under the McDonnell Douglas test, Plaintiff must first show a prima facie case of disparate treatment on the basis of his sex or retaliation. To establish a prima facie case of discrimination under the ADEA, Plaintiff must show that he: (1) belongs to a statutorily-protected group; (2) he applied and was qualified for a job for which the employer was seeking applicants, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. Carter, 387 F.3d at 878.

      If Plaintiff succeeds in establishing a prima facie case, the burden shifts to the Agency to articulate a legitimate, non-discriminatory reason for its actions. Id.; Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 802; Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151

(D.C. Cir. 2004). Once the Agency has articulated a legitimate, non-discriminatory reason for its actions, the prima facie inference of discrimination drops from the case. St. Mary's Honor Center v. Hicks, 509 U.S. 507, 510-11 (1993); Burdine, 450 U.S. at 255; Carter, 387 F.3d at 878. Plaintiff then must prove that the Agency's proffered reason was not the true reason for its actions and was only a pretext for unlawful discrimination. Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 804; see also St. Mary's Honor Center, 509 U.S. at 507-08; Aka v. Washington Hospital Center, 156 F.3d 1284, 1289 (D.C. Cir. 1998). The burden of persuasion that discrimination motivated the Agency's actions remains at all times with Plaintiff. St. Mary's Honor Center, 509 U.S. at 507; Burdine, 450 U.S. at 253; Aka, 156 F.3d at 1289.

As demonstrated below, applying the governing procedural and substantive law to the undisputed facts of this case yields the conclusion that summary judgment should be entered against Plaintiff's claims.

## II.    PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO ANY CLAIM OF RACE OR GENDER DISCRIMINATION.

Plaintiff's claims that the Defendant engaged in discriminatory employment practices when it failed to select him because of his gender and/or race should be dismissed because he did not exhaust his administrative remedies with respect to those claims. Compl. ¶¶ 8, 19, 32. Prior to seeking relief in Federal court under Title VII, a Federal employee must timely exhaust all available administrative remedies. See 42 U.S.C. § 2000e-16(c)); 29 C.F.R. § 1614.407; Kizas v. Webster, 707 F.2d 524, 544 & n.99 (D.C. Cir. 1983); see e.g., United Airlines v. Evans, 431 U.S. 553, 555 (1977); McDonnell Douglas, 411 U.S. at 555. Courts have strictly enforced the time deadlines throughout the complaint process under Title VII. Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985) ("A plaintiff who fails to comply, to the letter, with administrative deadlines

ordinarily will be denied a judicial audience."); Bayer v. Department of the Treasury, 956 F.2d

330, 332-33 (D.C. Cir. 1992) (although failure to comply with time limits is not a jurisdictional

defect, plaintiff bears the burden of pleading and proving sufficient reasons to excuse

noncompliance); see Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1994); Carter

v. Rubin, 14 F. Supp. 2d 22, 32 (D.D.C. 1998) (holding that federal employees may not file

employment discrimination actions outside applicable time deadlines).

   These procedural requirements governing a plaintiff's right to bring a Title VII claim in

court are not unimportant. "It is part and parcel of the Congressional design to vest in the federal

agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for

maintaining nondiscrimination in employment." Kizas, 707 F.2d at 544.  "Exhaustion is required

in order to give federal agencies an opportunity to handle matters internally whenever possible

and to ensure that the federal courts are burdened only when reasonably necessary." Brown, 777

F.2d at 14.

   Plaintiff, in spite of being represented by the same able counsel throughout the

administrative and District Court matters, has failed to exhaust his administrative remedies as to

race and gender discrimination for the 2002 non-selection.  Compl. ¶¶ 8, 19, 32.  Additionally,

although there is mention of a hostile work environment in the Plaintiff's complaint, he failed to

raise that claim during the administrative process.  See  Def's Exhs.19, 14; Compl. ¶ 34.  Hence,

any claims for race and gender discrimination and hostile work environment should be

dismissed.

   Plaintiff filed a formal EEO Complaint of Discrimination, on December 31, 2002,

contending that he was discriminated against solely because of age (55), when he was not

selected for the position of Motor Vehicle Operator.  Def. Exh 19.

Plaintiff filed another EEO Complaint on April 29, 2003.  Def. Exh 14.  This time, Plaintiff contended that he was discriminated against because of age and suffered reprisal for prior protected activity when he was: 1) singled out and questioned by his supervisors on December 19, 2002; 2) not permitted to work overtime on February 1 and 2, 2002, despite previously being scheduled for overtime on those dates; and 3) issued a removal proposal on February 21, 2003.  Id.  At no time was there any mention of race, gender or hostile work environment at the administrative level.  Accordingly, Plaintiff is not entitled to recover for these claims and they should be dismissed.

III.    **THE AGENCY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT HAS ARTICULATED LEGITIMATE, NON-DISCRIMINATORY REASONS FOR NOT SELECTING PLAINTIFF FOR THE GPO DRIVERS' POSITION**

Plaintiff claims that Defendant discriminated against him based on his age (55) when Defendant did not select him for the Motor Vehicle Driver position in violation of the ADEA. Defendant does not dispute that Plaintiff can demonstrate a *prima facie* case of discrimination based upon his age.  See Chappell-Johnson v. Powell, 440 F.3d, 484, 488 (D.C. Cir. 2006).

After Plaintiff establishes his *prima facie* case of discrimination, the burden is shifted to Defendant to articulate a legitimate nondiscriminatory reason for its non-selection of Plaintiff. See Tolson v. James, 315 F. Supp.2d 110, 114 (D.D.C.  2004) (Huvelle, J.).  In a non-selection context, as it is here, this Court previously observed that a plaintiff cannot establish pretext based on his own assessment of his performance because plaintiff's own subjective assessment of himself or his work performance is not relevant.  Id. at 116 (internal citation omitted).  "It is the perception of the decisionmaker which is relevant."  Id. (citing Waterhouse v. Dist. of Columbia, 298 F.3d 989, 997 (D.C. Cir. 2002)).  This Court also noted that it "deferred to the government's decision of what nondiscriminatory qualities it will seek in filling the position, because courts

are not super-personnel departments that reexamine an entity's business decisions." Id. at 117

(citing Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir. 2003)) (internal quotations omitted).

This Court also concluded that "[a]n employer has discretion to choose among qualified

candidates for a position . . . and absent a demonstrably discriminatory motive, an employer's

personnel decision – such as the choice of relevant qualifications – simply cannot be second-

guessed." Id. 315 F. Supp. at 117 (citing Fischbach v. Dist. of Columbia, 86 F.3d 1180, 1183

(D.C. Cir. 1996)).  See also Barnette, 453 F.3d at 517 (courts must defer to the employer's

decision as to which qualities required by the job it weighs more heavily and refuse to assess the

significance of small differences in substantive experience such as the subject matter of

candidates work or length of service), citing Stewart at 429.

       Here, Plaintiff was not selected because of the other candidates' greater experience,

having  previously made deliveries throughout the Washington, DC metropolitan area.[1]  Def.

Exh. 5.  Age was not a factor as Mr. Dudley selected Mr. Gamble who was 56 years old at the

time of the selection.  Moreover,  Mr. Gamble possessed greater experience making deliveries

throughout the Washington, DC metropolitan area than did all of the other candidates, including

the Plaintiff. Def. Exhs 4, 8.  Mr. Dudley credited Mr. Gamble's experience as a helper on a

particular delivery route (referred to as the "Back Bay Run") that makes deliveries ranging over

a wide area of the Washington DC metropolitan region.  Def. Exhibit 4.  Mr. Dudley also valued

the fact that Mr. Gamble worked in the Delivery Section since November of 2001, which was a

longer period of time than other employees, including Plaintiff. Def. Exhs 4, 8.

---

[1]  The duties of the PPW-5 Motor Vehicle Driver included, among other things, 'driv[ing].
Load[ing] and unload[ing] light delivery trucks capable of loads up to one ton" and "deliver[ing]
and pick[ing] up a variety of printed materials, proofs, and special items between [the GPO] and
various government and commerical buildings throughout the Washington, DC metropolitan
area.  Def. Exh. 3.

Applying the same criteria, Mr. Dudley concluded that Ms. McMillan also possessed significant experience making deliveries and driving delivery vehicles in the Washington, DC metropolitan area. Def. Exh 4.  Mr. Dudley noted that Ms. McMillan worked for a delivery service and drove delivery vehicles transporting batteries to customers in the Washington, DC region.  Def. Exhs 4, 9.  Mr. Dudley concluded that Mr. Daniels did not have comparable work experience to either Mr. Gamble or Ms. McMillan.  Def. Exh. 4.  The delivery run on which Plaintiff served as a helper was limited only to Capitol Hill.  Id.  Moreover, his prior delivery experience was driving a U.S. Postal Service jeep delivering mail in Baltimore, MD.  Id.

Likewise, Mr. Kirby's decision to select Mr. Silas and Mr. Williams for the Motor Vehicle Operator positions was solely because of their superior experience driving delivery vehicles in the Washington, DC region and their loading/unloading experience.[2]  Def. Exh 5. The candidates' ages played no role in the selection.  Id.  With these standards in mind, Mr. Kirby selected Christopher Silas because he worked for the Fairfax County Water Delivery Authority driving 4 panel delivery vans and 5-ton International dump trucks to construction sites.  Def. Exh 5, 10.  Mr. Silas also loaded and unloaded heavy construction materials into the delivery trucks and unloaded these materials at the delivery sites. Def. Exh 5, 10.   Applying these same criteria, Mr. Kirby selected Derron Williams for the remaining Motor Vehicle Driver position.  Def. Exh. 5.  Mr. Williams previously drove a 26-foot International delivery truck and a 20-foot Freight Line delivery truck while he worked for Allstate professional movers, and he picked up and delivered heavy objects (such as furniture and on one occasion a safe) from various locations in the Washington, DC area including federal agencies.  Def. Exh. 5, 11.

_____

[2]  The Delivery Section's Chief, Terrence Dudley and his Deputy, Paul Kirby, divided between each other the selection decisions to fill the 4 vacancies under Announcements 02-242 and 243. Def. Exhs. 4 & 5.

In contrast to the selectees, Plaintiff's experience was less impressive.  Def. Exhibit 5. Mr. Kirby noted that Plaintiff's experience did not include driving delivery vehicles in the Washington, DC region, but was limited to delivering mail and small packages while driving a jeep for the U.S. Postal Service in Baltimore, and driving a 15-passenger van for the Johns Hopkins University Hospital in Baltimore. Def. Exhs 5, 7.  Mr. Kirby was also aware that Daniels' delivery experience while working as a helper in the GPO Delivery Section was limited in scope: he helped GPO drivers make deliveries of the Congressional Record solely to Capitol Hill. Def.  Exhibits 5.

In short, Defendant did not select Plaintiff for the Driver position because of his experience and not because of his age.  As a result, summary judgment should be entered on behalf of the Defendant on Plaintiff's claim of age discrimination for the non-selection.

## IV.  THE AGENCY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT SUSTAIN HIS CLAIMS OF EITHER RETALIATION OR AGE DISCRIMINATION

Under the McDonnell Douglas burden-shifting framework in order to establish a prima facie case for a retaliation claim, the plaintiff must show  that (1) he or she engaged in protected behavior; (2) the employer took an action against plaintiff that was materially adverse; and (3) there is a causal link between the action and the protected activity.[3]  Carter, 387 F.3d at 878.  See also Burlington N. & Santa Fe. R.R. Co. v. White, 126 S. Ct. 2405, 2409 (2006).   That is, a plaintiff must demonstrate "materially adverse consequences. . . .such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm" which would have

---

[3]  Plaintiff has no Title VII claims.  Rather, Plaintiff's action is brought pursuant to the ADEA. Therefore, any retaliation claim would likewise arise under the ADEA and not Title VII.  See Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir.  1988), cert. denied, 489 U.S. 1079 (1989).

9

dissuaded a reasonable employee from making or supporting a charge of discrimination.  <u>Rochon</u>

<u>v. Gonzales</u>, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (citing <u>Brown</u>, 199 F.3d at 457).  "The anti-

retaliation provision protects an individual not from all retaliation, but from retaliation that

produces an injury or harm.  <u>Burlington Northern</u>, 126 S. Ct. at 2415.  The <u>Burlington</u> Court

speaks in terms of material adversity "because . . . . it is important to separate significant from

trivial harms [as] Title VII, . . . does not set forth a general civility code for the American

workplace."  <u>Id.</u>  "The anti-retaliation provision seeks to prevent employer interference with

unfettered access to Title VII's remedial mechanisms.  It does so by prohibiting employer

actions that are likely to deter victims of discrimination from complaining to the EEOC, the

courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of

good manners will not create such deterrence."  <u>Id.</u>  However, even if a plaintiff is able to

establish a *prima facie* case of retaliation, then the Court should apply the familiar <u>McDonnell</u>

<u>Douglas</u> analysis applicable to discrimination claims.

> [I] Plaintiff has Failed To Establish a *Prima Facie* Case Of Retaliation With
> Respect To The December 19, 2002 Conversation

Plaintiff claims that on December 19, 2002, he was singled out and questioned by his

supervisor regarding a conversation he was having with a co-worker who had previously filed a

complaint of discrimination.  Compl. ¶ 23, 25.  Specifically, Plaintiff claims that Mr. Dudley

observed him talking to a co-worker and as a result, called him into his office.  Plaintiff states

that while in the office, Mr. Dudley began questioning him about his conversation with his co-

worker and that Mr. Dudley's tone of voice was extremely hostile.  Def. Exh 6.  Plaintiff further

claims that although he explained to Mr. Dudley that he was talking to his co-worker about the

placement of time cards and the numbers on them, Mr. Dudley did not appear to accept that

explanation and commented that he could get rid of Plaintiff.  Plaintiff found such comments to be intimidating and frightening.  Def. Exh 6.  This claim fails to state a *prima facie* case of retaliation.  Title VII  does not set forth a general civility code for the American workplace.  Burlington Northern, 126 S. Ct. at 2415.  In the instant case, the December 19th conversation was nothing more than a garden-variety supervisor/employee conflict.  Defendant can not be said to have subjected the Plaintiff to a set of circumstances, materially adverse enough such that a reasonable employee would be dissuaded from engaging in protected activity.  See Rochon   In fact, Plaintiff filed his first EEO complaint on December 31, 2002, two days after the alleged event and filed another EEO complaint on April 29, 2003.  Not even Plaintiff was deterred by this interaction.

Furthermore, Mr. Dudley's comment that Plaintiff could be terminated was not unusual given that Plaintiff was still a probationary employee.[4]  He was hired on February 25, 2002.  Def. Exh. 1.  Civil Service regulations specifically direct federal managers to use the probationary period as a means of weeding out unsuitable employees.  5 C.F.R. § 315.803.[5]  Consequently, Plaintiff has failed to state a *prima facie* case of retaliation with respect to the December 19, 2002 conversation.

[II] There Are Legitimate Reasons For The Denial Of Overtime.

Plaintiff contends that he suffered reprisal for prior protected activity when he was not

---

[4]  As a probationary employee, Mr. Daniels could essentially be fired at will, without prior notice or hearing and with very limited post-termination appeal rights.  See 5 C.F.R. §§ 315.803, 315.804, 315.806.

[5]  Specifically, 5 C.F.R. § 315.803 states that "[t]he agency shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall terminate his services during this period if he fails to demonstrate fully his qualifications for continued employment." 5 C.F.R. § 315.803.

permitted to work overtime on February 1 and 2, 2002, despite previously being scheduled for

overtime on those dates.  Compl. ¶ 26, 27, 28, 29.  Overtime work for the weekend of February 1

and 2, 2003 was assigned by Mr. Dudley.  Def. Exh. 4.  Employees working on Mr. Daniel's

shift (5:00 AM to 1:30 PM) were scheduled to work overtime on Saturday, February 1, 2003,

delivering the Congressional Record.  Def. Exh. 4.  Employees from a later shift were assigned

to work overtime on Sunday, February 2, 2003 delivering copies of the federal budget.

Def. Exh 4.  On Friday, January 31, 2003, Mr. Dudley alerted all the employees scheduled to

work overtime on Saturday (including Plaintiff) that they were not to report for their scheduled

overtime work on February 1 because the Congressional Record was not ready for delivery.  Def.

Exh 4.  The overtime assignments for the employees scheduled to work on Sunday, February 2,

2003, were not changed. Def. Exh 4.  Despite being directed not to report for overtime during the

upcoming weekend, Plaintiff came to the worksite on Sunday, February 2 – which was not the

date that employees from his shift were scheduled to work overtime - and insisted on working

overtime.  Def. Exh 4.  As a result, Mr. Dudley ordered Plaintiff to leave the worksite.  Def Exh

4.  There is no evidence that Plaintiff was not allowed overtime on other occasions.

Accordingly, Plaintiff's claim of age discrimination and retaliation on the overtime issue should

be dismissed.

> [III] Plaintiff has Failed To Establish a *Prima Facie* Case Of Retaliation With
> Respect To The Proposed Removal

Plaintiff further claims that the Defendant proposed his removal on February 5, 2003 due

to age discrimination and in retaliation for his participation in EEO activity in December.  The

facts do not bear this out.  As previously stated, plaintiff was a probationary employee.  As such,

it was ill-advised for the Plaintiff to disobey an order of his ultimate supervisor.  Moreover,

because the Agency rescinded the removal before this litigation commenced, it is not actionable. Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir 2003) (an employer may cure an adverse employment action before the action is the subject of litigation). Left only with a verbal warning, plaintiff has failed to identify a materially adverse action. Id. An adverse employment action has been defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id., (quoting Burlington Indus. Inc v. Ellerth, 524 U.S. 742, 762 (1994). Not everything that makes an employee unhappy is an actionable adverse action. While being aggrieved is necessary to state a claim for retaliation, it is not sufficient to demonstrate that a particular employment action was adverse. The employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that the trier of fact could find objectively tangible harm. Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006). A mere warning does not demonstrate objective tangible harm.

[IV] Even Assuming *Arguendo* A *Prima Facie* Case, the Defendant Had Legitimate Reasons for Its Actions.

On or about February 4, 2003, and without authorization from his supervisors, Plaintiff set up office partitions and office furniture in the rear of the delivery platform for he and his friends to use during breaks from work. Def. Exhs 4, 13, 16. However, the partitions and furniture were set up in a work area where forklifts frequently operate, creating a work hazard. Id.

On February 5, 2003, Mr. Dudley learned from Plaintiff's Work Leader, Mr. Gerald Simms, about the partitions and that Plaintiff set them up and placed furniture in the partitioned

area. Id.  Mr. Dudley directed Mr. Simms to have Plaintiff  remove the partitions and furniture.

Id.  Thirty minutes later, Mr. Dudley noted that the partitions and furniture remained in place.

Id.  Accordingly, he again directed Mr. Gerald Simms to tell Plaintiff to remove the partitions

and furniture. Id.  Mr. Simms conveyed this instruction to Plaintiff, but after returning from

lunch and seeing the partitions and furniture still unmoved, Mr. Dudley asked Plaintiff to report

to his office. Id.  Mr. Dudley directed Plaintiff to remove the partitions and furniture. Id.

Plaintiff agreed to do so and then left Mr. Dudley's office. Id.

   The following morning of February 6, 2003, Mr. Dudley again noted that the partitions

and furniture had not been removed.  Id.  Instead of removing the items as promised, Plaintiff

and 3 other employees (Messrs. Walter Lancaster, Howard Shade, and Ronald Woody) requested

that Mr. Dudley allow them to keep the partitions and furniture in place. Id.  Mr. Dudley denied

the employees' request because the items posed a safety hazard and ordered the partitions and

furniture removed.  Id.  Mr. Dudley then directed Plaintiff and Messrs. Lancaster, Shade, and

Woody to remove the partitions and furniture, but they did not acknowledge this instruction.  Id.

Ultimately, the partitions and furniture were removed only by Mr. Shade and required him to use

a forklift . Id.

   Because Plaintiff disobeyed Mr. Dudley's orders 3 times in one day, on February 5,

2005, Mr. Dudley concluded that Plaintiff failed to demonstrate as a probationary employee that

he was suitable for continued employment by GPO.  Mr. Dudley therefore proposed that Plaintiff

be removed from his position for improper conduct and for creating disorder and confusion in

the Delivery Section.  Id.

   On February 21, 2003, Mr. Robert Schwenk, then Acting Production Manager, concurred

with Mr. Dudley and directed that Mr. Daniels be removed from employment at GPO during his

probationary period.  Def. Exh 16.  Mr. Schwenk's removal letter stated that "[t]he probationary period is the final essential evaluation of the examination process.  It is the time in which an employee has the opportunity to demonstrate, through actual performance and/or conduct, their acceptability and suitability for continued employment.  During this probationary period [Plaintiff] demonstrated [his] unsuitability for continued employment."  Id.

Sometime after Mr. Schwenk signed the February 21, 2002 removal letter, Ms. Lueann Green, former Director of GPO's Office of Employee Relations and Programs, reviewed the letter and noted that it erroneously made the effective date of Plaintiff' removal to be on February 25, 2003, one day after the expiration of his probationary period.  Def. Exh 17.  Consequently, Ms. Green concluded that GPO could not remove Plaintiff for unsatisfactory performance during his probationary period.  Id.

Ms. Green does not know why the February 21, 2003 removal letter contained this error.  Def. Exh 17.  After this erroneous date came to her attention, Ms. Green cancelled the removal and reinstated Plaintiff to employment at GPO with back pay.  Id.  Accordingly, Ms. Green's office generated a letter dated April 9, 2003, informing Plaintiff that he would be reinstated.  Id.

Plaintiff's removal was rescinded on April 9, 2003, and Plaintiff was directed to return to duty on April 14, 2003.  Def. Exh 18.  Plaintiff received back pay from February 25, 2003 to April 14, 2003, the entire period he was not working at GPO.  Id.  The penalty for the misconduct cited in the February 21, 2003 removal letter was changed to a verbal warning because Messrs. Lancaster, Shade, and Woody only received verbal warnings for the incident involving the partitions.  Def. Exh 5.

Accordingly, because the Defendant articulated legitimate non-discriminatory reasons for issuing the proposed termination letter, Plaintiff's claims for retaliation and discrimination in this

regard should be dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendant is entitled to summary judgment on all claims asserted by Plaintiff in this action.  Accordingly, this action should be dismissed in its entirety with prejudice.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney



_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney



_____/s/_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th Street, NW - Civil Division
Rm. 4-4808
Washington, D.C.  20530
(202) 305-1334