```
*******************************
                              *
NATHANIEL DANIELS, JR         *
    Complainant               *
        vs.                   *      GPO-03-21
                              *
GOVERNMENT                    *
PRINTING OFFICE               *
    Defendant                 *
*******************************
```

## AFFIDAVIT OF NATHANIEL DANIELS, JR

The accepted issue in this case is as follows:

Was the Complainant discriminated against because of his age (55) and subjected to reprisal actions because of his prior involvement in the EEO process when he was allegedly (1) singled out and questioned by his supervisor on December 19, 2002 regarding a discussion that was taking place near the time clock, (2) sent home even though he had been scheduled to work overtime on February 1 and 2, 2003, and (3) on or about February 5, 2003, he was written up and subsequently terminated during his probationary period for moving salvage material?

Q:  What is your age?

A:  55; DOB: 12-22-47.

Q:  How long have you worked for the Government Printing Office (GPO)?

A:  Since February of 2002.

Q:  Have you engaged in any prior EEO activity while working at GPO?

A:  Yes. I filed a previous EEO complaint (Case No. 03-09) when I was not selected for a promotion in the fall of 2002. I alleged age discrimination in this complaint that is still being processed.

Q:  What is your title?

A:  Printing Plant Worker, PG-1. I

Q:  What are the principal duties of your position?

A:  I take printed material that goes to various Agencies and other organizations and



GOVERNMENT EXHIBIT 6

5

load them on trucks. I have receipts showing which documents are going to which organizations and Agencies. I ride with the driver of the truck (I function as a helper) and deliver various printed documents based the receipts I have to the various organizations that ordered them.

Q: Who was your supervisor at the time these events arose?

A: My first line supervisor was Lloyd Logan. My second line supervisor was Paul Kirby, the Assistant Chief of the Delivery Section. Terrence Dudley was his supervisor and the Chief of the Delivery Section.

Q: What events led up to your filing this complaint?

A: I have always been a hard-working employee wherever I was employed. I got along with Mr. Dudley over the first six to eight months of my employment in the Delivery Section. Mr. Dudley gave me an outstanding performance appraisal.

Toward the latter part of 2002, Mr. Dudley mentioned to me that there would be some vacancies available to which I would be promoted. I told them that I very much wanted a promotion. He, in my view, indicated to me that he felt I should receive a promotion and that he would take care of it.

I applied for one of the vacancies. However, I began to hear that other co-workers were saying that they were going to be selected for these positions. I waited until the selection actions became permanent. When this took place, I realized that Mr. Dudley had selected younger individuals for the positions and had not chosen me. I felt that this was unfair and discriminatory.

I had noted that Mr. Dudley seemed to favor younger employees over older employees when it came to not just promotions but his general demeanor in the office. For example, I observed that Mr. Dudley was far more friendly with the younger staff members.

I was so upset with my treatment in this matter that I sought EEO counseling. When the matter was not resolve, I filed an EEO complaint of discrimination on December 29, 2002. (Case No. 03-09) From comments around the office, I realized that Mr. Dudley had learned that I went to an EEO counselor and then had filed an EEO complaint. I observed that Mr. Dudley started treating me in a less friendly manner and began taking actions that were adverse to me. I believe it was related to the fact that I had filed this complaint and he was aware of it.

This became evident with respect to the events of December 19, 2002. I was working a shift that day that began at six in the morning. Unbeknownst to me and the other employees working that morning, Mr. Dudley apparently had come into the office at 4 o'clock am. He did not make any of us aware that he was present in the

office. He came out of his office after 6 o'clock and observed me talking to a co-worker, Walter Lancaster. I was discussing with Mr. Lancaster the placement of time cards and where ~~they needed to be deposited~~. the number on them, ND.

Mr. Dudley suddenly directed that I come into his office. His tone of voice was extremely hostile. After he closed the door, Mr. Dudley began questioning me about my conversation with Mr. Lancaster. I explained what I was talking about to Mr. Lancaster. He did not seem to fully accept what I was saying. Finally, he commented that he could keep me or get rid of me and that it was his decision. I found his comments to be very intimidating and frightening. I no longer felt that Mr. Dudley would treat me in a fair manner. (Issue 1)

With respect to Issue 2, on January 31, 2002, I was told by ~~two~~ one different team leaders that I should come to work on Saturday, February 1 and Sunday, February 2 to work overtime. In particular, team leader Jerome Allgood specifically asked me to come in on February 2. On the night of January 31, 2003, Mr. Dudley called me up and said that I didn't need to come in on Saturday, February 1. As far as I knew, however, I supposed to come in Sunday, February 2. Accordingly, I appeared at work on time at 6 o'clock in the morning and began performing duties. I was assisting one of the truck drivers, ~~William Gross~~. NL.

Approximately an hour and half later, Mr. Dudley observed that I was working. He immediately confronted me and asked why I was working on this date. I told him that Mr. Allgood had stated that I was supposed to come in to work overtime this morning. Mr. Dudley then stated that Mr. Allgood did not have the authority to make such assignments and that he had specifically told me not to come in. I explained that was not the case. Mr. Dudley, I noted, had only called me not to come in on Saturday, February 1. Mr. Dudley got angrier and angrier and told me to leave. I told him I would do so but I wanted to talk briefly to Mr. Allgood. Mr. Dudley stated that was all right. When I asked Mr. Allgood what was going on, he said that he thought I was supposed to work on February 2 because higher level management had approved it.

I subsequently learned that Mr. Gross, who is a Union official, confronted Mr. Dudley about this situation and wanted to know why I was not allowed to work since they needed helpers' to assist the drivers and the Union contract required management to offer such work to the lower graded employees (such as myself) first. As far as I know, Mr. Gross did not get a satisfactory response from Mr. Dudley.

I felt that this treatment was completely inappropriate and wrong. It was a continuation of retaliatory conduct I was being subjected to.

Things came to a head with respect to the matters involving the third issue. I had observed that a number of employees had set up desk areas in the back part of our

3

work area where they could sit and eat their lunch. In performing my duties, I learned that another office was throwing out a desk and a partition. I asked them if I could take these items and they agreed to let me do so. I had a number of my co-workers help me move the desk and partition into the work area. This took place on February 5, 2003.

Mr. Logan observed what I was doing and seemed to indicate that he had no problem with it. Mr. Kirby saw the desk and partition and stated that I needed to move it (which I did) to avoid the blocking of the elevator. Mr. Dudley observed the desk and initially did not say anything. However, when it became apparent to him that I was the one who obtained the desk he immediately approached me and asked me who had given me authorization to do this. I told him that no one had but I thought since others had desks in the area that it would be appropriate for me and some of the other employees to have one too where we could sit.

Mr. Dudley stated that I could not have a desk and that I needed to move it out of the work area. I immediately agreed to do this. Because of other assignments that day, I realized that I could not move the desk and partition back until the following day. I went to Mr. Dudley's office before leaving work and explained this to him. He seemed to accept this and the next day I moved the desk back to where it came from. I subsequently learned, however, that Mr. Dudley had written me up for my actions. This was clearly uncalled for since I had gotten his agreement to move the desk back the following day.

This was followed up by a letter I received on February 21, 2003 from Mr. Dudley telling me that I was being terminated from my position during my probationary period. The letter was prepared by Robert E. Schwenk, Acting Production Manager but clearly was a result of input from Mr. Dudley. My termination was effective February 25, 2003.

I immediately attempted to appeal this decision. I got assistance from the Union Officials. In addition, I went to the EEO Office and sought their assistance.

Q: Are you currently working for GPO?

A: Yes. On April 14, 2003, I was reinstated into my position at my current grade. I eventually received back pay for my lost wages. However, I was never promoted. In addition, Mr. Dudley was assigned to another organization during February of 2003. I believe that management was aware that Mr. Dudley was engaged in inappropriate conduct and took action to address the situation.

Q: What relief are you seeking?

A: I would like a promotion of at least one grade which I had been promised by Mr. Dudley. I would like back pay for that promotion as well.


\* See Attachment Page (4A) N.D.

4

ADDENDUM   ( Page 4, Question 2)

Q:   What relief are you seeking?

A:   I would like a promotion to a grade six. I would also like to have back pay for that promotion as well. In addition, I am asking for compensatory damages for both physical and emotional injury caused by the retaliatory termination of my job.

As a result of my wrongful-termination, I became a victim of economic duress. I felt disturbed, confused and devastated. The financial difficulties I experienced, caused much stress, reactivated my ulcer and also caused sleepless nights.

In addition, I am asking for the resignation of the following persons for violating my rights, for conspiracy and co-conspiracy to the wrongful-termination of my job.

    Ms. Sherri Parker, Employee Relations Specialist
    Mr. Terrence Dudley, Material Handler Management
    Mr. Gerald Simms, Team Leader

4 A

Q:     Do you have anything further to add?

A:     No.

## CERTIFICATION

I, Nathaniel Daniels, Jr., have read the above transcribed verbatim statement, consisting of 5 pages, it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or imprisoned not more than 5 years, or both.

The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination. As a routine use, this information may be disclosed to persons involved in the processing and/or adjudication of this complaint; to the Equal Employment Opportunity Commission or to the Merit Systems Protection Board, as appropriate, to adjudicate complaints of alleged discrimination; to a court, party or counsel for a party in judicial or administrative litigation; to a congressional

5

office at your request; to a labor organization as may be required by the NLRA. Provision of the information requested is mandatory for the complainant, GPO employees and other federal employee witnesses. Failure of the GPO or other federal employees to provide the requested information could result in disciplinary action.

I declare under penalty of perjury that the foregoing is true and correct.

*Nathaniel Daniels Jr*
Nathaniel Daniels, Jr

Dated: 9-12-03

Affirmation by Investigator:
Jonathan E. Kaufmann