

**U.S. GOVERNMENT PRINTING OFFICE**
KEEPING AMERICA INFORMED

Nadine L. Elzy
Director, Equal Employment Opportunity Office

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

NOV 1 8 2005
In reply refer to:
GPO Case Numbers 03-09 and 03-21

Mr. Donald S. Johnson, Sr.
P.O. Box 4703
Capital Heights, MD 20791

Dear Mr. Johnson:

Under the authority vested in me by the rules and regulations of the Government Printing Office and the Equal Employment Opportunity Commission, I am rendering a decision on your client's complaints of discrimination referenced above. This letter constitutes the final decision by the Government Printing Office on these complaints.

Based on the enclosed analysis and findings, which are incorporated into this decision, I have determined that the evidence is not sufficient to support your client's claims of discrimination based on age and reprisal. Therefore, I am closing the record on these matters. Your appeal rights are enclosed.

Sincerely,

NADINE L. ELZY
Director, Equal Employment Opportunity

Enclosures (3)
EEOC Form 573, Appeal Rights

cc: Mr. Nathaniel Daniels
    2513 N. Rosedale Street
    Baltimore, MD 21216

732 North Capitol Street, NW    Washington, DC 20401    202-512-2074    nelzy@gpo.gov



GOVERNMENT EXHIBIT 15

DISCRIMINATION COMPLAINTS OF:   Nathaniel Daniels and
                                Bruce R. James, Public Printer,
                                Government Printing Office

GPO CASE NUMBER:                03-09 and 03-21

## INTRODUCTION:

The Complainant, Mr. Nathaniel Daniels (D.O.B. 12/22/47), is employed in the Delivery Section, Plant Operations Department, of the U.S. Government Printing Office. He applied for two separate positions but was not selected. He alleges discrimination on the basis of age-nearly 55 at the time of his non-selection. In a subsequent complaint, he contends that he was discriminated against on the bases of his age, and in reprisal for his participation in the EEO process when he was singled out and questioned by his supervisor, sent home even though he had been scheduled to work over-time, and written up and subsequently terminated during his probationary period.

## PROCEDURAL BACKGROUND:

### Case Number 03-09:

In his first complainant, the Complainant sought EEO counseling on November 22, 2002. Efforts to resolve the matter were not successful so he was issued a Notice of Right to File on December 20, 2002 **(Exhibit 1)**. He subsequently filed a formal complaint of discrimination on December 31, 2002 **(Exhibit 3)**. Having met all procedural requirements, the complaint was accepted for processing on March 3, 2003, and assigned for investigation on March 6, 2003, **(Exhibits 7 and 8 respectively)**. At the conclusion of the investigation, the Complainant was provided a copy of the Investigative File (IF), and was informed of his right to request a hearing before an EEOC Administrative Judge or, alternatively, to receive a final decision by the Agency. On August 20, 2003, the Complainant requested a hearing in accordance with 29 C.F.R. §1614.109. However, on June 24, 2005, through his attorney, the Complainant withdrew his request for a hearing and requested that the matter be returned to the Agency for the issuance of a Final Agency Decision.

PAGE 2

## ISSUE ACCEPTED FOR PROCESSING (GPO Case 03-09):

Whether the Complainant was discriminated against because of his age (55) when he was not selected for the position of Printing Plant Worker (Motor Vehicle Operator), KA-5703, advertised under Vacancy Announcement Numbers 02-242 and 02-243.

### Case Number 03-21:

In the second complaint, the Complainant sought EEO counseling on January 13, 2003. Efforts to resolve the matter were not successful so he was issued a Notice of Right to File on April 23, 2003. He subsequently filed a formal complaint of discrimination on April 29, 2003 **(Exhibit 2)**. Having met all procedural requirements, the complaint was accepted for processing on July 29, 2003, and assigned for investigation on August 26, 2003 **(Exhibits 4 and 1 respectively)**. At the conclusion of the investigation, the Complainant was provided a copy of the Investigative File (IF), and was informed of his right to request a hearing before an EEOC Administrative Judge or, alternatively, to receive a final decision by the Agency. On February 2, 2004, the Complainant requested a hearing in accordance with 29 C.F.R. §1614.109. However, on June 24, 2005, through his attorney, the Complainant withdrew his request for a hearing and requested that the matter be returned to the Agency for the issuance of a Final Agency Decision.

## ISSUE ACCEPTED FOR PROCESSING (GPO Case 03-21):

Whether the Complainant was discriminated against because of his age (55), and subjected to reprisal actions because of his prior involvement in the EEO process when he was allegedly: (1) singled out and questioned by his supervisor on December 19, 2002, regarding a discussion that was taking place near the time clock, (2) sent home even though he had been scheduled to work overtime on February 1 and 2, 2003, and (3) on or about February 5, 2003, he was written up and subsequently terminated during his probationary period for moving salvaged material.

## LEGAL STANDARDS FOR ANALYSIS:

These cases involve an allegation of employment discrimination based on age. As such, they are brought pursuant to the Age Discrimination in Employment Act (ADEA). Under the ADEA, it is

PAGE 3

"unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a complainant alleges that he or she has been disparately treated by their employing agency as a result of unlawful age discrimination, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 141 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). That is, [complainant's] age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." Id.

In disparate treatment cases, where there is an absence of direct evidence of discrimination, the allocation of burdens and order of presentation of proof is a three-step process. (McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); see also Reeves, 530 U.S. at 142 (applying McDonnell Douglas analysis to ADEA claim). Under this analytical framework, the complainant must first establish a prima facie case of unlawful age discrimination -- that complainant was a member of a protected class of individuals under the ADEA; that he or she applied for and was otherwise qualified for the position; that despite his or her qualifications complainant was rejected; and that the agency subsequently selected someone for the position who was substantially younger than complainant. Reeves, 530 U.S. at 142; O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); McDonnell Douglas, 411 U.S. at 802. It is not necessary for complainant to rely strictly on comparative evidence in order to establish an inference of discriminatory motivation necessary to support a prima facie case. O'Connor, 517 U.S. at 312; EEOC Enforcement Guidance on O'Connor v. Consolidated Coin Caterers Corp., EEOC Notice No. 915.002, at n.4 (Sept. 18, 1996). However, the ultimate burden of persuading the trier of fact that the agency intentionally discriminated against complainant remains at all times with complainant. Reeves, 530 U.S. at 143 (quoting Texas Dep't of Community Affairs v. Burdine, 450, U.S. 248, 253 (1981)).

The record shows that the following facts are uncontroverted: The complainant is a member of the class of individuals protected under the ADEA (nearly 55 at the time of selection); he applied for and was qualified for the Printing Plant Worker (Motor Vehicle Operator) positions as evidenced by his referral on the selection certificates, and he was not selected for either position.

PAGE 4

**(Exhibits 22 and 37 in IF 03-09).** To establish the fourth element of a prima facie case of age discrimination, complainant need only prove that someone substantially younger than himself was selected while he was not, or present comparative evidence which would support an inference of unlawful discrimination. See Reeves, 530 U.S. at 142; O'Connor, 517 U.S. at 312-13. For the position advertised under Vacancy Announcement Number 02-242, the selectees were ages 30, 31, and 40. For the position advertised under Vacancy Announcement Number 02-243, the selectee was 56 years of age at the time of his selection. The Complainant has met his burden, and has established his prima facie case in the first instance. While it does not appear that he has established a prima facie case with respect to age in the second non-selection because the selectee for the position was age 56, and in fact 22 months older than the Complainant, we will proceed with the analysis of the evidence in this claim as well.

Once Complainant has established a prima facie case, the burden shifts to the agency to "produce evidence that [complainant] was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves, 530 U.S. at 142 (quoting Burdine, 450 U.S. at 254). This burden is one of production, not persuasion, and involves no assessment of the credibility of the agency's proffered reason. Id. If the agency meets this burden of production, the presumption of intentional discrimination accorded by complainant's prima facie case "drops out of the picture." Id. at 143. However, "the trier of fact may still consider the evidence establishing [complainant's] prima facie case 'and inferences properly drawn there from . . . on the issue of whether [the agency's] explanation is pretextual.'" Id. (quoting in part Burdine, 450 U.S. at 255). Complainant must be afforded "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [agency] were not its true reasons, but were a pretext for discrimination. . . . [T]he [complainant] may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence."

If the employer successfully rebuts the prima facie case of age discrimination, the burden rests with the Complainant, to prove that the reason or reasons proffered are a pretext for discrimination. The Complainant at all times has the burden of persuasion.

The agency has articulated legitimate nondiscriminatory reasons for selecting the younger individuals over complainant with respect to the position advertised under Announcement Number

02-242. The Selecting Official (SO) #1 (Terrance Dudley – D.O.B. 10/09/67), Chief of Delivery at the time of the selection, stated that he selected two individuals—one from each vacancy announcement. He testified that at no time did he consider age during the selection process. He argues that he choose the two candidates whom he believed could do the best job based on their knowledge, skills, and experience.

SO #1 indicated that he was looking for someone who had previous truck driving experience and who was familiar with the DC area. He stated that he was also looking for a candidate who was dependable and who came to work on time. SO #1 stated that the candidate also needed oral and written communication skills because the position required the individual to interact with customers and to prepare manifests. SO #1 indicated that there were approximately 10-12 applicants referred for consideration. He testified that interviews were conducted, and all candidates were asked the same questions. SO #1 revealed that he had some concerns regarding the Complainant's candidacy. Specifically, he contends that the complainant arrived late for the interview, which to him was not a good sign, and he did not answer the interview questions as well as some of the other candidates. SO #1 can not recall the specific questions or answers, and he testified in his affidavit that the notes have since been destroyed.

With respect to SO #1's selections, he chose DeShawn McMillan (02-242) and Lamar Gamble (02-243). SO #1 stated that Ms. McMillan did very well during the interview, had previous experience as a truck driver—having worked for a local delivery service, she knew the Washington area quite well and had experience interacting with customers. He felt her overall experience made her a better candidate, even though she was working in Industrial Cleaning at the time of her selection. With respect to his selection of Lamar Gamble, he stated that Mr. Gamble had experience as a Motor Vehicle Operator and was quite familiar with the Washington area. He testified that Mr. Gamble's interview went well, he had experience working in the Delivery Section, had worked as a helper on the trucks and was familiar with most destinations and deliveries that had to be made. He also indicated that Mr. Gamble was learning the truck routes and was becoming familiar with the customers. It was SO #1 belief that Mr. Gamble was around the same age as the Complainant.

Selecting Official #2 (Paul Kirby – D.O.B. 10/03/72), Assistant Section Chief of Delivery, stated that he selected two candidates and SO #1 selected two candidates. SO #2 testified

PAGE 6

that he selected the two candidates who he believed could best perform the duties of the position based on their knowledge, skills, and abilities. He asserts that he never considered age during the selection process.

SO #2 offered that the position requires the driver to operate small trucks and deliver printed material to customers. He indicated that in assessing the candidates, he wanted someone who was dependable, who had truck driving experience, and who knew the Washington DC area well. SO #2 revealed that while the Complainant was qualified, he did not believe he was one of the best qualified candidates.

In a nonselection case, a complainant may demonstrate pretext in a number of ways, including a showing that his qualifications were observably superior to those of the selectee. Bauer v. Bailor, 647 F.2d 1037, 1048 (10th Cir. 1981); Williams v. Department of Education, EEOC Request No. 05970561 (August 6, 1998). In the case at hand, complainant makes two arguments in an attempt to establish pretext. First, he asserts that he was better qualified than at least 2 of the 4 individuals selected based on his knowledge, skills and abilities. He states that he began working in the Delivery Section in February 2002, and was responsible for loading and unloading trucks, and delivering printed material around the Washington DC area. He indicated that he never had any problems with his performance. He was of the opinion that his interview for the position went well. He revealed that he had previous experience driving a commercial vehicle and also had the experience of working in the Delivery Section. He indicated he was getting to know the customers and the routes used to deliver. He asserts that he was very dependable and had no attendance or lateness problems. He contends that he is better qualified than at least 2 of the candidates selected – Mr. Williams and Ms. McMillan. He offers that Mr. Williams was much younger, and had only worked in the Delivery Section about 2-3 months when he was selected. He alleges that Mr. Williams made a statement to a co-worker that he was positive he would get one of the truck driver positions. Therefore, the Complainant believes Mr. Williams was promised the position before it was posted. With respect to the other successful candidate, Ms. McMillan, he stated that she was not even working in the Section at the time of the selection, and "he knows he is much better qualified" than her. He also seems to suggest that this individual was an ex-girlfriend of SO #1.

PAGE 7

He attributes age to be a factor in his nonselection because SO #1 is alleged to have made a comment in front of employees in the Section which he believes demonstrates a bias with regard to age. SO #1 is accused of having made the comment "the section would be better off after the old people retired or left." He further contends that it is not true that he arrived late for his interview, and suggests that management interviewed candidates so they would have an excuse for not selecting him. **(Exhibit 9)**

Around the time of these selections, the Delivery Section had a workforce of 37 employees. Of this total, 13 or 35% were under the age of 40 and 24 or 65% were over the age of 40. Of those employees who fall within the protected group (over 40), 9 or 25% are ages 40-50, and 15 or 40% between the ages of 50-62. **(Exhibit 17)**

Nine (9) candidates were identified as Best Qualified under Vacancy Announcement No. 02-242: 4 candidates were in their 30's, 3 in their 40's and 2 in their 50's -- includes Complainant. Three individuals were selected from this certificate-ages 40, 3 and 31. **(Exhibit 22)** Seven (7) candidates were identified as Best Qualified under Vacancy Announcement No. 02-243: 1 was 30, 3 were in their 40's, and 3 in their 50's—includes the Complainant (age 54) and the Selectee (age 56). **(Exhibit 37)**

The IF also contains selection history for SO #1 during the period that he was employed as the Chief of the Delivery Section. **(Exhibit 44)** This listing identifies 9 individuals who were awarded promotions. The ages of those promoted were: 53, 62, 49, 30, 30, 31, 54, 50, and 42. This data does not seem to support age bias on the part of SO #1.

As mentioned above, the complainant makes reference to being more qualified than at least 2 of the 4 successful candidates. The following table summarizes the driving experience extracted from the applications, and performance ratings for those selected as compared to the Complainant:

PAGE 8

| Selectee's Name | Years Driving | Types of Vehicles | Performance Rating |
|---|---|---|---|
| Nathaniel Daniels Complainant | 5 | Jeep<br>15-passenger van | Outstanding |
| DeShawn McMillan Selectee - 02-242 | 2 | ½ ton panel truck | Outstanding |
| Christopher Silas Selectee - 02-242 | 20 | Panel Van<br>5 ton Intern'tl Dump Truck<br>L-Body International Stack Body<br>Ford Pick-up - 1 ton | |
| Derron Williams Selectee - 02-242 | 4+ years | 26 ft International Truck<br>20 & 26 ft Freight Ln Truck<br>Dodge 15 passenger | Outstanding |
| Lamar Gamble Selectee - 02-243 | 5 | 7 ton capacity truck<br>Chevy Step Van-3 ton capacity<br>various other size trucks | Outstanding |

After reviewing the qualifications of the complainant and the selectees, we are unable to conclude that complainant's qualifications are observably superior to those selected. While Complainant has 3 more years of driving experience than one of the selectee's, we can not surmise that made him observably superior. The selecting official has the discretion to choose from among equally qualified candidates and their decision should not be second guessed without evidence of unlawful motivation. See Fodale v. Department of Health and Human Services, EEOC Request No. 05960344 (October 16, 1998). While several co-workers testify that they believe complainant to be more qualified, no one, including complainant, provided evidence of unlawful motivation in the selection process. They all testify that SO #1 made a derogatory comment alluding to getting rid of his older workers, however, as stated previously, the workforce statistics do not seem to support age bias. Accordingly, complainant has failed to establish by a preponderance of the evidence that the agency's articulation is a pretext for age discrimination.

Unlike a Title VII case, the complainant has the ultimate burden of demonstrating that age was a determinative factor, and not simply a factor, in the adverse employment action. The complainant failed to present evidence that more likely than not, the agency's articulated reasons for its actions were a pretext for discrimination in regard to these selections.

PAGE 9

An employer has discretion to choose among equally qualified candidates, so long as the judgment is not based on unlawful criteria. In the absence of such evidence, we will not second guess the supervisor's assessment of the candidate's qualifications. Burdine, at 259. The complainant's qualifications are not such that his nonselection evidences pretext.

With regard to the second complaint (GPO Case 03-21), the complainant contends that he was discriminated against because of his age (55), and subjected to reprisal actions because of his prior involvement in the EEO process when he was (1) singled out and questioned by his supervisor on December 19, 2002, regarding a discussion that was taking place near the time clock, (2) sent home even though he had been scheduled to work overtime on February 1 and 2, 2003, and (3) on or about February 5, 2003, he was written up and subsequently terminated during his probationary period for moving salvaged material.

**LEGAL STANDARDS FOR ANALYSIS:**

In addition to the ADEA claim, the complainant brings forth an allegation of pursuant to Title VII of the Civil Rights Act of 1964, as amended (hereinafter Title VII). Title VII, prohibits, among other bases, retaliatory actions for engaging in EEO activities such as filing an EEO complaint, or otherwise participating in the EEO process.

When the allegation involves reprisal, in order to carry his _prima facie_ burden, the complainant must show that: (1) he engaged in a protected activity; i.e., participated in Title VII proceedings; (2) the employer knew of the protected activity; (3) the employer took an adverse employment action, and (4) some nexus exists between his activity and the adverse employment decision, i.e., the adverse employment decision occurred within such a period of time that a retaliatory inference arises. A _prima facie_ case may be established by evidence showing that protected activity was followed closely in time by the adverse action, or by introducing evidence of disparate treatment of other employees who had not filed an EEO complaint. Hochstadt v. Worcester Foundation for Experimental Biology, Inc. 545 F.2d 222 (1st Cir. 1976).

If the complainant carries this initial burden, the burden then shifts to the agency "to articulate some legitimate, nondiscriminatory reason" for its challenged action. McDonnell

Douglas, 411 U.S. 802. The agency needs to demonstrate only that a genuine issue of fact is raised by the evidence to meet its burden of going forward with the evidence. Furnco, supra.

Finally, should the agency offer admissible evidence sufficient to rebut the complainant's prima facie case, the presumption created by the complainant's prima facie case drops and the disposition turns on a determination of the ultimate factual issue, that is, whether the agency intentionally discriminated against the complainant. At this point, the complainant must be "afforded the opportunity to show that [the agency's] stated reason for [its action] was a pretext" to hide discrimination. St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993); McDonnell Douglas, 411 U.S. 802-04; Burdine, 450 U.S. at 252-53; United States Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983). To meet this burden, the complainant must show that the agency did not rely on its proffered reason or that its proffered reason is not worthy of belief.

In order for Complainant to support his claim, he must show that (1) the incidents alleged demonstrate hostility or aversion toward him because of his prior EEO activity; (2) the harassment was sufficiently severe or pervasive by the standard of a reasonable person in the same or similar circumstances; and (3) there is a legal basis for holding the employer liable for the harassment. See Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982). Again, the alleged harasser's conduct should be evaluated from the objective viewpoint of a reasonable person in Complainant's circumstances. Enforcement Guidance on Harris v. Forklift Systems, Inc., EEOC Notice No. 915.002 (March 8, 1994).

**ANALYSIS AND FINDINGS**

Prima Facie Case

As stated above, in order to establish a prima facie case on based on reprisal, the complainant must establish that: (1) he engaged in a protected activity; (2) the employer knew of the protected activity; (3) the employer took an adverse employment action; and (4) some nexus exists between his activity and the adverse employment decision; i.e., the adverse employment decision occurred within such a period of time that a retaliatory inference arises.

PAGE 11

After reviewing the record as a whole, we conclude that the Complainant has established a <u>prima facie</u> case of reprisal. The record establishes that the Complainant engaged in protected activity when he filed a prior EEO complaint regarding his nonselection for two positions (the subject of GPO Case Number 03-09). The supervisor (Terrance Dudley) whom he believes subjected him to reprisal was aware of that activity because he was interviewed by the EEO Counselor on December 9, 2002. A series of acts occurred culminating with the termination of the Complainant during his probationary period, within such a period of time that a retaliatory inference arises (alleged retaliatory acts occurred December 19, 2002, February 1 and 2, 2003, and February 5, 2003).

**Claim 1 - Singled out and questioned by his supervisor on December 19, 2002, regarding a discussion that was taking place near the time clock:**

Mr. Dudley revealed that he came to work earlier than usual on the day in question, and that he overheard the Complainant and another individual discussing the leave of another employee. He contends he came out of his office and directed both (individually) to come into his office to discuss the situation. Mr. Dudley contends he advised both that monitoring other employees' time and attendance was not relevant to their job. (Exhibit 6).

The Complainant asserts that he and another employee were discussing the placement of time cards and the numbers on them. He alleges that Mr. Dudley's voice was extremely hostile, and that Mr. Dudley intimidated him my stating that he (Dudley) could keep him or get rid of him.

A witness for the Complainant testified that he was attempting to show the Complainant where employee ID numbers could be found on time cards. He indicated that Mr. Dudley appeared on the platform and said that he had been listening to the conversations of various employees. He contends that Mr. Dudley pointed to a number of employees, including him and the Complainant, and said he wanted to speak with them. This witness revealed that Mr. Dudley was very aggressive and told him to "stop instigating things." He testified that Mr. Dudley next called the Complainant into his office but never called any of the other employees. He believes that Mr. Dudley singled the out because both had prior EEO activity. (Exhibit 9)

PAGE 12

Aside from his mere assertion, the Complainant does not offer any evidence to support that age or prior EEO activity were factors influencing this incident. The evidence is insufficient to show that the Complainant was questioned in reprisal for his prior participation in the EEO process, or that the supervisor chose to discuss this matter with the Complainant because of his age.

**Claim 2 - Sent home even though he had been scheduled to work overtime on February 1 and 2, 2003:**

The Complainant contends that on January 31, 2003, he was told by Jerome Allgood (Team Leader), to report to work on February 1 and 2, 2003. He states that on the night of January 31, 2003, Mr. Dudley called him and advised him he did not need to come in on Saturday (February 1). The Complainant asserts that as far as he was concerned, he was still supposed to report on Sunday, February 2, 2003, so he reported for duty at six o'clock in the morning and began to work. He testified that approximately 1 ½ hours later, Mr. Dudley observed that he was working and confronted him about why he was there since he (Dudley) had called him on the 31st. The Complainant informed Mr. Dudley that his conversation referred only to work that he was scheduled to perform on Saturday. The Complainant perceived that this comment made Mr. Dudley angry. The Complainant also testified that another Truck Driver (union official) confronted Mr. Dudley about not allowing the Complainant to work because they were in need of helpers, and the contract required that the work be first offered to lower-graded employees.

Mr. Dudley asserts that the practice in the Delivery Section was to offer overtime on a rotating basis...those who had not been offered overtime most recently. He testified that he called the Complainant on Friday, January 31, 2003, to inform him of a change in schedule because the overtime for Saturday, February 1, had been cancelled. Mr. Dudley indicated that the Complainant was not supposed to be working overtime on Sunday because he had previously received overtime during the proceeding week. Additionally, Mr. Dudley revealed that Mr. Allgood was not authorized to offer overtime. He indicated that when he observed that the Complainant was reporting to work, he immediately questioned him about why he was there. Mr. Dudley stated that the Complainant advised him that Mr. Allgood had told him to come in, and that he informed the Complainant that Mr. Allgood did not have the authority to grant overtime. Mr. Dudley indicated that when he questioned Mr. Allgood, Mr. Allgood denied authorizing

PAGE 13

the Complainant to come in. It was at that point that he told the Complainant to leave. Mr. Dudley testified that the Complainant began pacing the floor in a hostile manner and stated that he was not going anywhere, but eventually the Complainant left.

Mr. Paul Kirby, Assistant Chief of the Delivery Section at the time of the above incident, states that management had difficulties supervising the Complainant. He testified that the Complainant worked on the delivery of the Congressional Record which was scheduled to be delivered on Saturday, February 1, 2003, but since the record was not going to be ready, the Complainant was advised not to come to work. He indicated that a budget report was scheduled to go out on Sunday and that the plan was to have employees on the later shift have an opportunity to work overtime and handle the delivery of the budget. Mr. Kirby testified that the Complainant was not supposed to work on February 2, 2003. Mr. Kirby indicated that he believes there was some misunderstanding because the Complainant reported to work on February 2, 2003. Mr. Kirby also testified that Mr. Allgood did not have the authority to schedule overtime. He confirmed that when Mr. Dudley observed the Complainant was at work, he requested that he (Complainant) leave. Mr. Kirby asserts that this decision was not based on the Complainant's age, or the fact that he had filed an EEO complaint (Exhibit 7).

Three witnesses for the Complainant testify that the practice had been to offer overtime to the lowest-graded employees first. Two of these witnesses indicate that they heard Mr. Allgood advise the Complainant to report to work. Two witnesses state that after the Complainant was sent home, Grade 5 Drivers were called in to work overtime which they believe is contrary to the union contract.

Mr. Allgood testified that the complainant said to him "I'm working with you on Sunday." He indicated that replied "okay" because he assumed that the Complainant had already spoken with Mr. Dudley or Mr. Kirby, who were the only persons authorized to grant overtime.

There appears to be confusion, at best, as to who authorized the Complainant to report to work for the overtime assignment on February 2, 2003. Management testified that overtime is offered to those who have not been offered it most recently, while several employees testify that it should be offered to the lowest-graded employee first. The general provisions for

PAGE 14

overtime contained in the Agreement state that "employees with the least continuous seniority...will be selected first." It does not appear that the complainant was denied this overtime based on his prior complaint activity. In fact, one of his witnesses (Lancaster) had prior complaint activity and was not ordered to leave. The file is devoid of a list of employees who performed overtime on the day in question, to enable one to determine the ages of those who worked overtime. However, the Complainant does not provide any pretext argument or offer any evidence, aside of his assertion, that age was a factor. The complainant has the ultimate burden to prove that age was a determining factor. He has failed to do this.

**Claim 3 - On or about February 5, 2003, he was written up and subsequently terminated during his probationary period for moving salvaged material:**

The Complainant testified that a number of employees in his office had set up desk areas in the back where they could sit and eat lunch. He stated that he came upon an office that was throwing out a desk and partitions and asked if he could take them. He indicates that they agreed so he enlisted the help of some of his co-workers to move the desk and partitions into their work area on February 5, 2003. The Complainant states that Mr. Logan, Supervisory PPW, observed and had no problem with it, and Mr. Kirby advised him they needed to move it to avoid blocking the elevator. He contends that initially Mr. Dudley did not say anything until it became apparent he (Complainant) was responsible for obtaining the material. The Complainant alleges that Mr. Dudley then approached him and asked who had given him the authorization. The Complainant stated that he advised Mr. Dudley that no one had, but that since others had desks in the work area, he thought it would be appropriate for him and some of the other co-workers as well. He contends that Mr. Dudley told him that he could not have a desk and needed to move it out of the work area immediately. The Complainant asserts that while he agreed to move the items, he could not so until the next day because of other work assignments. He contends that he explained this to Mr. Dudley and that Dudley seemed to accept this. The next day, the Complainant states he moved the desk back to where it came from but subsequently learned that Mr. Dudley had written him up for his actions. On February 21, 2003, the Complainant testified that he received a letter advising him that he was being terminated from his position during his probationary period. The Complainant testified that after appealing his termination he was reinstated on April 14, 2003, with back-pay.

PAGE 15

Mr. Dudley argues that he noticed three large partitions had been set up in the rear of the delivery platform. He indicated that he asked Mr. Kirby and Mr. Logan whether or not they had authorized the placement of the partitions and both indicated they had not. He learned that the Complainant had set up the partitions so he directed the Complainant to remove the partitions. Mr. Dudley indicated that the Complainant failed to remove the material in a prompt manner. He indicated that he learned that Complainant told another employee that he (Dudley) could take down the partitions himself. Mr. Dudley contends that at the end of the day he asked the Complainant whether or not he had taken the partitions down and the Complainant answered that he would do it in the morning. Based on this Mr. Dudley stated that he signed the recommendation that the Complainant be terminated during his probationary period for performance that had "not proven satisfactory." He indicated that the termination letter (Exhibit 16) cited the incident regarding the overtime on February 2, 2003, and the furniture incident of February 5, 2003, as instances wherein the Complainant had not conducted himself in a suitable manner and had disregarded authority.

Mr. Kirby testified that this incident took place over a two-day period. He indicated that on the first day he noticed a desk and several chairs near an elevator, which was inappropriate because forklifts unload things from this nearby elevator. As a result, he advised the Complainant to move the material (desk and chairs) away from the area for safety reasons. He contends that on the next day, Mr. Dudley asked him to step out of his office and directed him to a different part of the work area where the Complainant had not only set up a desk and chairs, but added more furniture including partitions which had the effect of creating a series of cubicles. Mr. Kirby indicated that these items were set up in an area where forklifts operate, and that he and Mr. Dudley concluded that this was a dangerous situation. Therefore, he indicated that Mr. Dudley directed the Complainant to remove the chairs and desk. Mr. Kirby stated that the Complainant engaged in a series of instances wherein he had not followed the directives of management, and since the Complainant was still in his probationary period, he and Mr. Dudley concluded that it would be best to terminate the Complainant. Mr. Kirby relayed that the Complainant did not come to work on the date he was supposed to receive his notice of termination, so the process was delayed beyond his probationary period. As a result, the Complainant was not given proper notice and therefore was brought back to work. Mr. Kirby asserts that the decision was not related to the Complainant's age or his prior EEO activity.

PAGE 16

Mr. Logan, Supervisory PPW testified that the Complainant was an excellent employee. However, he also indicated that he did not believe Mr. Dudley's decision to terminate the Complainant was related to his age or EEO activity, but because he went over the head of his supervisor.

Mr. Lancaster (Complainant's witness) revealed that another employee set up a series of chairs, desks, hot plate and an electric radio, and management had never complained about that situation. He contends that Mr. Kirby observed the material and said it was acceptable, but they needed to relocate the items away from the elevator. He also believed that once Mr. Dudley learned that the Complainant was involved, he immediately began to write him up and told them they had to remove the furniture.

Witnesses testify that once Mr. Dudley learned the Complainant was involved with the furniture he decided it needed to be removed. Another asserts that management took this action because they learned the Complainant had filed a complaint; yet stated he never heard Mr. Dudley make comments regarding the Complainant's age, or his involvement in the EEO process. Therefore, it is not clear how they form the basis for their belief. There is no explanation in the file as to why one worker was permitted to have a desk. The fact remains that the Complainant was asked to remove the items and he failed to do so until the next day. Management testimony reveals that the Complainant did not get permission to delay the removal of the property.

Based on the foregoing, we find that Complainant has not sustained his burden of proving, by a preponderance of the evidence, that the actions about which he complained had any connection to his prior EEO activity. In addition, he failed to show that age played a role in the decision-making process and had a determinative influence on the outcome.

**DECISION:**

It is the final decision of the Government Printing Office that based on a complete examination of the evidence of record, we conclude that the complainant has not presented sufficient evidence to prove that the agency's articulated reasons were pretextual, or that his age actually played a role in the agency's decision-making process and had a determinative influence on the outcome. An award of attorney's fees and costs is not appropriate.

**APPEAL RIGHTS (Attached)**

# NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations

1. Appellant's name (Last, First, Middle): [Please Print or Type]

2. Home/mailing address:

3. Name and address of attorney or other representative, if any:

4. Appellant's daytime telephone number (incl. area code):

5. Representative's telephone number (if applicable):

6. Has the appellant filed a formal complaint with his/her agency?
   ☐ No   ☐ Yes - indicate the Agency's complaint number_____

7. Name of the agency being charged with discrimination:

8. Location of the duty station or local facility in which the complaint arose:

9. Has a FINAL DECISION been issued by the agency, an Arbitrator, FLRA, or MSPB on this complaint?
   ☐ YES (indicate the date the appellant RECEIVED it: _____, and ATTACH A COPY.)
   ☐ NO
   ☐ This appeal alleges a breach of a settlement agreement.

10. Has a complaint been filed on this same matter with this Commission, another agency, or through any other administrative or collective bargaining procedure?
    ☐ NO  ☐ YES (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate).

11. Has a civil action (lawsuit) been filed in connection with this complaint?
    ☐ NO  ☐ YES (ATTACH A COPY OF THE CIVIL ACTION FILED)

12. Signature of appellant or appellant's representative

13. Date:

NOTICE: Before mailing this appeal, be sure to attach a copy of the final decision from which you are appealing, if one has been issued. Any comments or brief in support of the appeal MUST be filed with the Commission AND with the agency within 30 days of the date this appeal is filed. Making a knowingly false statement on this form is punishable by law. See 18 USC § 1001. PRIVACY ACT STATEMENT ON REVERSE SIDE.

FOR EEOC USE ONLY:

OFO DOCKET NUMBER:

EEOC FORM 573 REV 6-92

## NOTICE OF APPEAL RIGHTS

If you are dissatisfied with this decision, you have the right to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court.

All time periods are given in **calendar** days. If a time period expires on a Saturday, Sunday or Federal holiday, you may file on the next business day. If you are represented by an attorney, the time periods begin to run from the date your attorney receives this decision.

### FILING AN APPEAL WITH EEOC

You have the right to appeal this decision to the EEOC **within 30 days** of the day you receive this final agency decision. File your appeal by mail addressed to:

> DIRECTOR, OFFICE OF FEDERAL OPERATIONS
> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
> P.O. Box 19848
> WASHINGTON, DC 20036

or by personal delivery or facsimile. At the same time you file an appeal with EEOC, you must also send a copy of your appeal to:

> DIRECTOR
> OFFICE OF EQUAL EMPLOYMENT OPPORTUNITY
> GOVERNMENT PRINTING OFFICE
> 732 NORTH CAPITOL STREET, NW., ROOM C709
> WASHINGTON, DC 20401

In your appeal to EEOC, you must state the date and method (for example, by certified mail or hand delivery) by which a copy of the appeal was sent to the Director, Office of Equal Employment Opportunity. You should use the attached EEOC Form 573, Notice of Appeal/Petition, to file your appeal. EEOC will dismiss your appeal if you do not file it within the time limits.

The original of any statement or brief in support of your appeal must be filed with EEOC, with a copy to the Director, Office of Equal Employment Opportunity Office, **within 30 days** of the date you file your appeal.

## FILING A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court **within 90 days** after you receive this final decision if you do not appeal to EEOC.

You may also file a civil action **within 90 days** after receipt of the EEOC's final decision on appeal, or **after 180 days** from the date of filing an appeal with EEOC if there has been no final decision by EEOC.

If you claim age discrimination, you should seek the advice of an attorney if you wish to file a civil action after expiration of the time limits noted above. The courts disagree about when a civil action must be filed and may permit an age discrimination complaint to be filed two years or more from the date of the alleged discrimination.

You must also comply with the following instructions:

(1) You must name **BRUCE R. JAMES, PUBLIC PRINTER** as the defendant. Failure to provide his name and official title may result in dismissal of your case.

(2) If you decide to file a civil action and if you do not have, or cannot afford, the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action must be filed within 90 days of the date you receive the agency or EEOC decision.

You may have to file a civil action within 30 days, not 90 days, after receiving this final decision or a decision from the EEOC if the alleged discriminatory conduct that is the subject of your complaint occurred before November 21, 1991. To be sure your civil action is timely, you may wish to file within 30 days.