IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**NATHANIEL DANIELS,**     \*
                    \*
    **Plaintiff,**     \*
                    \*
    v.     \*     **Civil Action No. 05-2455 (GK)**
                    \*
**BRUCE R. JAMES, PUBLIC PRINTER**     \*
**U.S. Government Printing Office**     \*
**732 North Capital Street, N.W.**     \*
**Washington, D.C. 20401**     \*
                    \*
    **Defendant.**     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT</u>

Plaintiff, Nathaniel Daniels, by and through his attorney, Donald S. Johnson, Sr., respectfully moves this Court, to deny Defendant's motion for entry of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In support of this response, the Plaintiff refers the Court to the Record herein, and the Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment thereof, attached hereto.

                                           Respectfully submitted,


                                           _____/S/_____
                                           Donald S. Johnson, Sr.
                                           Attorney for Plaintiff,
                                           Nathaniel Daniels

.

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **NATHANIEL DANIELS,** | \* |
| | \* |
| **Plaintiff,** | \* |
| | \* |
| v. | \*   Civil Action No. DKC-97-3459 |
| | \* |
| **TOGO D. WEST, JR.,** | \* |
| **Secretary of the Army,** | \* |
| | \* |
| **Defendant.** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Nathaniel Daniels has filed this action to redress deprivations of his civil rights in employment under the deprivation of rights secured to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended 1991 Civil Rights Act, 42 U.S.C. § 2000e, et seq., hereinafter "Title VII" and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*, hereinafter "ADEA.". The gravamen of Plaintiff's Complaint is that Defendant's officials engaged in a concerted effort to perpetrate a pattern of activities which deprived Plaintiff of his civil rights, subjected him to acts of reprisal, and ultimately, caused him to suffer irreparable harm financially, physically, and mentally. Defendant has filed a motion for summary judgment, or in the alternative, to dismiss. Herewith is Plaintiff's response.

I.   FACTUAL BACKGROUND

Plaintiff Nathaniel Daniels first began working at United States Government Printing Office (GPO) On February 21, 2001, as a Printing Plant Worker, PG-01, in the Delivery Section. Plaintiff excelled in all aspects of his work at GPO, and earned plaudits for his dedication, diligence, and exceptional work products. [Plaintiff (Pl.) Exhibit (Ex.) 1].

On August 30, 2002, four Printing Plant Workers (Motor Vehicle Operator) KA-5703-05 positions were advertised under two Vacancy Announcement Numbers, 02-242 and 02-243. Three vacant positions were advertised under Vacancy Announcment Number 02-242 and one vacant position was advertised under Vacancy Announcment Number 02-2423.

Plaintiff applied for the positions and was placed on the Certificate of "Best Qualified" under both announcements (Pl. Exs. 2 and 4). However, Plaintiff was not selected for any of the four vacancies. Plaintiff states that he was better qualified than two of the younger selectees. One of whom was working as a custodian and the other who had only been working in the unit for approximately two months (Pl. Ex. 3).

As shall be clearly shown below, Defendant's actions are merely a pretext for discrimination and retaliation.

II.   DEFENDANT'S MOTION

Defendant premises its motion for summary judgment, or in the alternative, to dismiss, on the following points:

1. Plaintiff cannot establish a *prima facie* case of disparate treatment on the basis of his sex or retaliation.

2. Plaintiff could establish a *prima facie* case of retaliation or discrimination.

      3.      Plaintiff cannot establish a *prima facie* case of reprisal for any protected activity in which he engaged.

      5.      Plaintiff's claims based upon race or gender discrimination are barred for failure to exhaust his administrative remedies.

      6.      Defendant has established legitimate, nondiscriminatory reasons for the adverse actions taken against Plaintiff.

      7.      Many of Plaintiff's claims do not constitute an adverse personnel action against Plaintiff.

      III.      <u>SUMMARY OF PLAINTIFF'S ARGUMENT</u>

The undisputed facts on this record will clearly show the following:

      a.      Plaintiff is a African American male with a date of birth of December 22, 1947 (Pl. Ex. 1).

      b.      Plaintiff has been an exceptional performer for his entire Federal career.

      c.      During his employment, all of Plaintiff's supervisors were aware of his exceptional job performance.

      d.      The Plaintiff applied for a position as a motor vehicle operator under vacancy announcements 02-242 and 02-243 (Pl. Ex. 4).

      e.      Plaintiff was found qualified for the position but was not selected for any of the four vacancies (Pl. Ex. 2).

      f.      Plaintiff was better qualified than two of the selectees, who both were younger than the Plaintiff and one worked as a custodian and the other had been in the unit for approximately 2-3

4

months when she was selected (Pl. Exs. 2 and 3).

    g.    Terence Dudley, Plaintiff's supervisor and one of the Selecting Officials for the afore described vacancies, stated that, "I will be glad when all these old people get out of this department." This statement was made in the presence of not only the Plaintiff, but also Ronald Woody (Pl. Ex. 5), Walter Lancaster (Pl. Ex. 6), John Hawkins (Pl. Ex. 7), Charles Henderson, and Marvin Barnes (Deceased).

    h.    Plaintiff filed a formal complaint of discrimination on December 29, 2002.

    i.    On December 19, 2002, Plaintiff was questioned by his supervisor, Terence Dudley, regarding a conversation Plaintiff was having with Mr. Walter Lancaster who had EEO matters pending against GPO.

    j.    Terence Dudley spoke to Plaintiff in an extremely hostile voice and which Plaintiff characterizes his comments as being intimidating and frightening (Pl. Ex. 1).

    k.    On January 31, 2003, Plaintiff was told, during his regular shift, by his Team Leader Jerome Allgood to report to work on Saturday, February 1, and Sunday, February 2, 2003.

    l.    On the night of January 31, 2003, Plaintiff was called at home by his supervisor, Terence Dudley, and told not to report for work on Saturday, February 1, 2003.

    m.    Plaintiff did not report to work on Saturday but did report to work on Sunday, February 2, 2003 at his regular start time of 6:00 a.m. as previously instructed by his Team Leader.

    n.    After approximately 1 ½ hours of being on the job, Plaintiff was confronted by Mr. Dudley and asked why he was working on Sunday, February 2, 2003. To wit, Plaintiff explained that his Team Leader told him to report on both Saturday and Sunday and you (Mr. Dudley) stated for me not to report on Saturday. Mr. Dudley never stated to Plaintiff not to

report for work on Sunday.

    o.    Plaintiff did as instructed and returned home without incident.

    p.    On February 5, 2003, Plaintiff and some of his co-workers moved a discarded desk to an area shop utilized by other co-workers (Pl. Exs. 1 and 6).

    q.    Initially the position of the desk and materials was not objectionable until Mr. Dudley determined that Plaintiff and Walter Lancaster were responsible for the desk and material. It was then that Plaintiff and Walter Lancaster received Verbal Warnings and were asked to move the materials out of the section.

    r.    On February 21, 2003, Plaintiff received a letter of Proposed Termination.

    s.    On April 14, 2003, Plaintiff was reinstated to his position and provided back pay for his loss wages.

    t.    Prior to Plaintiff's reinstatement and subsequent to his termination, Plaintiff suffered irreparable harm to his body, mind, finances, family life, and character.

    IV.    <u>THE LEGAL STANDARDS</u>

    A.    <u>Motion for Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure governs the standards for summary judgment. Under the legal standards applied to motions for summary judgment filed under Rule 56, the party seeking summary judgment has the burden of proving the absence of <u>any</u> issue of material fact. <u>Addickes v. S. H. Kress and Co.</u>, 398 U.S. 144, 157 (1970). In deciding whether any issue of material fact exists, the Court must accept the Plaintiff's version of the facts, since the trier of fact is required to resolve all issues of fact in favor of the party opposing the motion for summary judgment. <u>Bishop v. Wood</u>, 426 U.S. 341, 347 and n. 11 (1976).

In resolving the motion for summary judgment, the trier of fact must study the record, and if a review of the record resolving all issues of fact in favor of the nonmoving party leads to the belief that inferences adverse to those of the moving party might be permissible, then the motion for summary judgment must be denied. United States v. Diebold, 369 U.S. 654, 655 (1962). Thus, the first, and most important, inquiry in resolving a motion for summary judgment is the determination of whether there are any material facts in issue.

Summary judgment will lie only if there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Material facts are those which might affect the outcome of the litigation. Factual disputes which are irrelevant or unnecessary are not to be considered. Ibid. Thus, the moving party must not only make certain factual allegations which, standing alone, would permit judgment to be rendered in his favor, but must present undisputed evidence in support of those allegations to prove that judgment in his favor is warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248-49 (citing First National Bank of Arizona v. Cities Services Co., 391 U.S. 253, 288-89 (1968)).

At the summary judgment stage, the Judge's function is not to herself or himself weigh the evidence for the truth of the matter asserted, but to determine whether there is a genuine issue for trial. The evidence must be so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52. In other words, because summary judgment is such an extreme remedy, it is usually appropriate only where the facts are undisputed and only one conclusion can be drawn from the facts. Edwards v. Consolidated Rail Corp., 567 F. Supp. 1087 (D.D.C.), aff'd., 733 F.2d 966 (D.C.Cir. 1983). Thus, "[S]ummary judgment is not to be granted

because the moving party appears likely, or even very likely, to prevail at trial; the procedure is reserved for cases where the material facts are so clear that a trial would be an empty exercise in formalism." Popham, Haik, Schnobrich v. Newcomb Securities, 751 F. 2d 1262 (D.C. Cir. 1985). "Summary judgment is proper only when it is clear that there is no dispute concerning the facts of the controversy or the inferences to be drawn from those facts." Pulliam Investment Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). At the summary judgment stage, any and all inferences which may be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing" the motion for summary judgment. Gillins v. Berkeley Electric Co-op, Inc., 148 F.3d 413 (4th Cir. 1998) (citations omitted).

    B.    Motion to Dismiss

In considering a motion to dismiss, all well-pleaded factual allegations in the Complaint must be accepted as true, and all reasonable inferences drawn from those facts must be viewed in the light most favorable to the party bringing the action. Hishon v. King & Spalding, 467 U.S. 69, 72 (1984). An action may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Bruce v. Riddle, 631 F.2d 272 (4th Cir. 1980).

    V.    PLAINTIFF'S DISCRIMINATION CLAIMS

    A.    Plaintiff Easily Makes His Burden of Proof

Absent direct evidence of discrimination or retaliation, the order and burden of proof in an individual case of employment discrimination is governed by the standards set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of

Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas-Burdine paradigm applies to cases brought for race, gender (sex) and age. Halperin v. Abacus Technology Corp., 128 F.3d 191 (4th Cir. 1997).

To establish a prima facie case of race, sex (gender), retaliation (prior protected EEO activity), Plaintiff must prove, (1) he is a member of a protected class;(2) he experienced an adverse employment action; and (3) similarly situated employees outside his protected class were treated more favorably in like circumstances.

Additionally, to establish a *prima facie* case of age discrimination, the Plaintiff must demonstrate that: (1) he was in the age group protected by the ADEA (40 or older); (2) he suffered an adverse employment action; and (3)the adverse employment action was motivated or determined by her age. *See* O'Connor v. Cons. Coin Caterers Corp, 116 S. Ct. 1307 (1996); Berg v. Bruce, 112 F.3d 322 (8th Cir. 1997).

The evidence of record establishes at least a *prima facie* case of disparate treatment. That is, the record shows that the Agency's action, if otherwise unexplained, could have been motivated by an unlawful intent. The establishment of a *prima facie* case creates a presumption, or inference, of discrimination.

The central question in any employment discrimination action is whether the employer acted with unlawful intent. Here there is direct evidence of intent, by the affidavits of Plaintiff's co-workers regarding the discriminatory *animus* of the selecting official toward older workers and the unexplained disparate treatment of the Plaintiff by his supervisors. Additionally, the circumstantial evidence in this case, of which there is sufficient, is to be evaluated using a three-stage burden-shifting approach. See St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Texas Department of

Community Affairs v. Burdine, 450 U.S. 248 (1981); and McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). The same pattern of analysis developed under Title VII has generally been applied to age discrimination cases. See, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 70 FEP Cases 486 (1996).

The standard of proof for disparate treatment based on age is more rigorous than the standard of proof for disparate treatment under Title VII. To prevail under the ADEA, a Complainant must prove that age was a determining or motivating factor in an adverse employment decision taken by the employer. Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993). However, the complainant need not prove that race or age was the employer's sole or exclusive consideration, but only that race or age made a difference in the decision.

      B.     DEFENDANT STATED RATIONALE IS PRETEXTUAL

Plaintiff having stated his *prima facie* case, the burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the actions complained of. The immediate question which comes to mind is: (1) Why can't management explain in detail, the reason(s) Plaintiff was rated as number 3 on the Certificate of the Best Qualified, yet, Plaintiff was not selected for one of four vacant positions; and (2) Why can't management explain in detail the reason(s) Plaintiff's employment was recommended to be terminated when Plaintiff's conduct and performance on the job had been outstanding up until one month before the proposal to terminate and which coincided with Plaintiff's filing a discrimination complaint.

      1.     Plaintiff Did Not Conduct Himself Inappropriately Nor Did He Disregard Authority

Defendant posits in its Proposed Removal that Plaintiff had refused to conduct himself in a suitable manner and he disregarded authority. Plaintiff had at all times conducted himself in a

professional manner and never disregarded the authority of his supervisor(s).

    2.    <u>There Is Further Evidence of Pretext on the Record</u>

There is also an abundance of evidence of pretext on this record. In carrying out their vendetta against Plaintiff, Defendant's officials violated numerous Federal regulations. For instance, on February 21, 2005, Terence Dudley recommended disciplinary action (termination) against Plaintiff for, *inter alia*, misuse of government property. 29 CFR § 1614.203 (a),(g). Violation of laws, rules or regulations in effecting personnel actions is also in violation of the Civil Service Reform Act, 5 U.S.C. § 2302(b)(11).

The termination of the Plaintiff's employment with GPO was rescinded because the termination was not done properly. Evidence that an employer fails to follow its own regulations, or violates established procedures in effecting personnel actions is clear evidence of pretext. <u>See</u>,<u>Mohammed v. Callaway</u>, 698 F.2d 395 (10th Cir. 1983).

    VI.    <u>PLAINTIFF CAN ESTABLISH A CASE OF RETALIATION</u>

Defendant argues that Plaintiff cannot establish a case of retaliation because Plaintiff filed an EEO complaint subsequent to the retaliatory actions complained of.

The law is clear that protected activity under discrimination law does not require that an employee file formal charges of discrimination against his or her employer; even informal protests or accusations of discrimination are protected activity under Title VII of the Civil Rights Act of 1964. <u>Armstrong v. Index Journal Co.</u>, 647 F.2d 441 (4th Cir. 1981). Even if Plaintiff were mistaken in his belief that Defendants were discriminating against him, Plaintiff's expressions of discrimination and support of another person engaged in a Title VII action constituted protected activity, whether or not the Plaintiff allegations of discrimination were true. <u>Balazs v. Liebenthal</u>,

32 F.3d 151 (4th Cir. 1994).

Moreover, the acts that Plaintiff complains of were continuing and pervasive. These acts are multiple acts of discrimination and retaliation resulting from discriminatory and retaliatory policies of the Agency. See, Lambert v. Genesee Hospital, 10 F.3d 46, 52 (2nd Cir. 1993), cert. denied, 114 S.Ct. 1612 (1994); Hull v. Cuyahoga Valley J.V.S. Dist., 926 F.2d 505 (6th Cir. 1991). It should also be stressed that claims of retaliation "are particularly well-suited for the continuing violation theory." Caliendo v. Bentsen, Sec'y. of Treasury, _ F. Supp. _, 95 FEOR 5042 (D.D.C. March 31, 1995).

VIII.    THERE WAS ADVERSE ACTION BESIDES TERMINATION

Defendant also states that Plaintiff's termination claims should be dismissed because they do not constitute an adverse action for Title VII purposes. Again, the actions such as taking away Plaintiff's employment, his ability to earn overtime, his right to be free from intimidation and a hostile work environment etc., are, as discussed in the previous paragraph, part of a continuing pattern of discriminatory and retaliatory acts. These acts made Plaintiff's workplace environment extremely hostile, and were sufficient in some circumstances to constitute a hostile work environment. Cf., Carter v. Ball, 33 F.3d 450 (4th Cir. 1994); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 19850, cert. denied, 475 U.S. 1082 (1986).

Moreover, Defendant's reliance on Title VII law to support its proposition is misplaced. Under Title VII law, it is well settled that a federal employee may bring a Title VII claim for employment discrimination with respect to any employment decision made by an agency of the federal government. This is clearly provided by the language of Title VII itself, which states that

"all personnel actions affecting employees or applicants for employment...shall be made free from any discrimination...."  42 U.S.C. § 2000e-16.

Thus, courts have consistently held that personnel actions are covered by Title VII, irrespective of the harm alleged.  To be considered an adverse action, the personnel action does not have to result in injury, in fact, that is, a reduction in grade or pay.  Saul v. United States, 928 F.2d 829, 834 (9th Cir. 1991) (citations omitted), but may merely be an action which affects the terms, conditions, or privileges of employment, whether or not there is a tangible economic loss.  See, Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986) (hostile working environment); Palmer v. Schultz, 815 F.2d 84 (D.C. Cir. 1987) (work assignments and performance evaluations); Segar v. Smith, 738 F.2d 1249 (D.C. cir. 1984) (work assignments); Yartzoff v. Thomas, 809 F.2d 1371 (9th Cir. 1987), cert. denied, 111 S.Ct. 345 (1990) (transferring duties away from employee).

Forms of harassment are considered unlawful when the harassment is patterned or pervasive.  Cf., McKinney v. Dole, 765 F.2d 1129, 1138 (D.C. Cir. 1985).  Even, as here, where the supervisor has made negative comments about an employee, such comments have been considered a personnel action sufficient to constitute a prohibited personnel practice, in violation of merit systems principles, and thus, clearly would constitute sufficient grounds for a Title VII complaint. Roth v. United States, 952, F.2d 611, 614 (1st Cir. 1991).

> IX PLAINTIFF HAS NOT FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO HIS CLAIM OF RACE OR GENDER DISCRIMINATION

Succinctly stated, the requirement of exhausting administrative remedies with regard to Title VII claims goes only to issues not to bases.  A Complainant or Plaintiff may change the bases

of his complaint at any point in the administrative or judicial proceedings, so long as the bases is/are prohibited by Title VII. The Plaintiff in this matter plead the same issues as were exhausted during the administrative process. Further, Plaintiff is permitted to pursue all bases available under Title VII so long as the issues remain the same as that which was brought forth during the administrative process.

Clearly, therefore, Plaintiff's claims in this regard state a claim for relief, and should not be dismissed.

## CONCLUSION

For the reasons cited herein, Defendant's motion for summary judgment should be denied. The overwhelming evidence shows that Defendant violated Plaintiff's rights with respect to Title VII and ADEA, and further, that Defendant did not select Plaintiff for a vacancy position, subjected Plaintiff to a hostile work environment, and terminated Plaintiff because of discrimination and retaliation.

Respectfully submitted,

_____/S/_____
Donald S. Johnson, Sr.
Bar No. 372774
P.O. Box 4703
Capitol Heights, Md. 20791
(301) 808-6770
Attorneys for Plaintiff
Nathaniel Daniels