```
*******************************
                              *
NATHANIEL DANIELS, JR         *
     Complainant              *
          vs.                 *               GPO-03-21
                              *
GOVERNMENT                    *
PRINTING OFFICE               *
     Defendant                *
*******************************
```

# AFFIDAVIT OF NATHANIEL DANIELS, JR

The accepted issue in this case is as follows:

Was the Complainant discriminated against because of his age (55) and subjected to reprisal actions because of his prior involvement in the EEO process when he was allegedly (1) singled out and questioned by his supervisor on December 19, 2002 regarding a discussion that was taking place near the time clock, (2) sent home even though he had been scheduled to work overtime on February 1 and 2, 2003, and (3) on or about February 5, 2003, he was written up and subsequently terminated during his probationary period for moving salvage material?

Q:  What is your age?

A:  55; DOB: 12-22-47.

Q:  How long have you worked for the Government Printing Office (GPO)?

A:  Since February of 2002.

Q:  Have you engaged in any prior EEO activity while working at GPO?

A:  Yes. I filed a previous EEO complaint (Case No. 03-09) when I was not selected for a promotion in the fall of 2002. I alleged age discrimination in this complaint that is still being processed.

Q:  What is your title?

A:  Printing Plant Worker, PG-1. I

Q:  What are the principal duties of your position?

A:  I take printed material that goes to various Agencies and other organizations and

1

load them on trucks. I have receipts showing which documents are going to which organizations and Agencies. I ride with the driver of the truck (I function as a helper) and deliver various printed documents based the receipts I have to the various organizations that ordered them.

Q: Who was your supervisor at the time these events arose?

A: My first line supervisor was Lloyd Logan. My second line supervisor was Paul Kirby, the Assistant Chief of the Delivery Section. Terrence Dudley was his supervisor and the Chief of the Delivery Section.

Q: What events led up to your filing this complaint?

A: I have always been a hard-working employee wherever I was employed. I got along with Mr. Dudley over the first six to eight months of my employment in the Delivery Section. Mr. Dudley gave me an outstanding performance appraisal.

Toward the latter part of 2002, Mr. Dudley mentioned to me that there would be some vacancies available to which I would be promoted. I told them that I very much wanted a promotion. He, in my view, indicated to me that he felt I should receive a promotion and that he would take care of it.

I applied for one of the vacancies. However, I began to hear that other co-workers were saying that they were going to be selected for these positions. I waited until the selection actions became permanent. When this took place, I realized that Mr. Dudley had selected younger individuals for the positions and had not chosen me. I felt that this was unfair and discriminatory.

I had noted that Mr. Dudley seemed to favor younger employees over older employees when it came to not just promotions but his general demeanor in the office. For example, I observed that Mr. Dudley was far more friendly with the younger staff members.

I was so upset with my treatment in this matter that I sought EEO counseling. When the matter was not resolve, I filed an EEO complaint of discrimination on December 29, 2002. (Case No. 03-09) From comments around the office, I realized that Mr. Dudley had learned that I went to an EEO counselor and then had filed an EEO complaint. I observed that Mr. Dudley started treating me in a less friendly manner and began taking actions that were adverse to me. I believe it was related to the fact that I had filed this complaint and he was aware of it.

This became evident with respect to the events of December 19, 2002. I was working a shift that day that began at six in the morning. Unbeknownst to me and the other employees working that morning, Mr. Dudley apparently had come into the office at 4 o'clock am. He did not make any of us aware that he was present in the

2

office. He came out of his office after 6 o'clock and observed me talking to a co-worker, Walter Lancaster. I was discussing with Mr. Lancaster the placement of time cards and where ~~they needed to be deposited~~. the Number on them, ND.

Mr. Dudley suddenly directed that I come into his office. His tone of voice was extremely hostile. After he closed the door, Mr. Dudley began questioning me about my conversation with Mr. Lancaster. I explained what I was talking about to Mr. Lancaster. He did not seem to fully accept what I was saying. Finally, he commented that he could keep me or get rid of me and that it was his decision. und his comments to be very intimidating and frightening. I no longer felt that Mr. Dudley would treat me in a fair manner. (Issue 1)

ND.

With respect to Issue 2, on January 31, 2002, I was told by ~~two~~ one different team leaders that I should come to work on Saturday, February 1 and Sunday, February 2 to work overtime. In particular, team leader Jerome Allgood specifically asked me to come in on February 2. On the night of January 31, 2003, Mr. Dudley called me up and said that I didn't need to come in on Saturday, February 1. As far as I knew, however, I supposed to come in Sunday, February 2. Accordingly, I appeared at work on time at 6 o'clock in the morning and began performing duties. I was assisting one of the truck drivers, ~~William Gross~~. N.D.

Approximately an hour and half later, Mr. Dudley observed that I was working. He immediately confronted me and asked why I was working on this date. I told him that Mr. Allgood had stated that I was supposed to come in to work overtime this morning. Mr. Dudley then stated that Mr. Allgood did not have the authority to make such assignments and that he had specifically told me not to come in. I explained that was not the case. Mr. Dudley, I noted, had only called me not to come in on Saturday, February 1. Mr. Dudley got angrier and angrier and told me to leave. I told him I would do so but I wanted to talk briefly to Mr. Allgood. Mr. Dudley stated that was all right. When I asked Mr. Allgood what was going on, he said that he thought I was supposed to work on February 2 because higher level management had approved it.

I subsequently learned that Mr. Gross, who is a Union official, confronted Mr. Dudley about this situation and wanted to know why I was not allowed to work since they needed helpers' to assist the drivers and the Union contract required management to offer such work to the lower graded employees (such as myself) first. As far as I know, Mr. Gross did not get a satisfactory response from Mr. Dudley.

I felt that this treatment was completely inappropriate and wrong. It was a continuation of retaliatory conduct I was being subjected to.

Things came to a head with respect to the matters involving the third issue. I had observed that a number of employees had set up desk areas in the back part of our

3

ADDENDUM   ( Page 4, Question 2)

Q:   What relief are you seeking?

A:   I would like a promotion to a grade six. I would also like to have back pay for that promotion as well. In addition, I am asking for compensatory damages for both physical and emotional injury caused by the retaliatory termination of my job.

As a result of my wrongful-termination, I became a victim of economic duress. I felt disturbed, confused and devastated. The financial difficulties I experienced, caused much stress, reactivated my ulcer and also caused sleepless nights.

In addition, I am asking for the resignation of the following persons for violating my rights, for conspiracy and co-conspiracy to the wrongful-termination of my job.

      Ms. Sherri Parker, Employee Relations Specialist
      Mr. Terrence Dudley, Material Handler Management
      Mr. Gerald Simms, Team Leader

Q: Do you have anything further to add?

A: No.

## CERTIFICATION

I, Nathaniel Daniels, Jr., have read the above transcribed verbatim statement, consisting of 5 pages, it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or imprisoned not more than 5 years, or both.

The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination. As a routine use, this information may be disclosed to persons involved in the processing and/or adjudication of this complaint; to the Equal Employment Opportunity Commission or to the Merit Systems Protection Board, as appropriate, to adjudicate complaints of alleged discrimination; to a court, party or counsel for a party in judicial or administrative litigation; to a congressional

office at your request; to a labor organization as may be required by the NLRA. Provision of the information requested is mandatory for the complainant, GPO employees and other federal employee witnesses. Failure of the GPO or other federal employees to provide the requested information could result in disciplinary action.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Nathaniel Daniels, Jr

Dated: 9-12-03

Affirmation by Investigator:
_____
Jonathan E. Kaufmann

6

work area where they could sit and eat their lunch. In performing my duties, I learned that another office was throwing out a desk and a partition. I asked them if I could take these items and they agreed to let me do so. I had a number of my co-workers help me move the desk and partition into the work area. This took place on February 5, 2003.

Mr. Logan observed what I was doing and seemed to indicate that he had no problem with it. Mr. Kirby saw the desk and partition and stated that I needed to move it (which I did) to avoid the blocking of the elevator. Mr. Dudley observed the desk and initially did not say anything. However, when it became apparent to him that I was the one who obtained the desk he immediately approached me and asked me who had given me authorization to do this. I told him that no one had but I thought since others had desks in the area that it would be appropriate for me and some of the other employees to have one too where we could sit.

Mr. Dudley stated that I could not have a desk and that I needed to move it out of the work area. I immediately agreed to do this. Because of other assignments that day, I realized that I could not move the desk and partition back until the following day. I went to Mr. Dudley's office before leaving work and explained this to him. He seemed to accept this and the next day I moved the desk back to where it came from. I subsequently learned, however, that Mr. Dudley had written me up for my actions. This was clearly uncalled for since I had gotten his agreement to move the desk back the following day.

This was followed up by a letter I received on February 21, 2003 from Mr. Dudley telling me that I was being terminated from my position during my probationary period. The letter was prepared by Robert E. Schwenk, Acting Production Manager but clearly was a result of input from Mr. Dudley. My termination was effective February 25, 2003.

I immediately attempted to appeal this decision. I got assistance from the Union Officials. In addition, I went to the EEO Office and sought their assistance.

Q: Are you currently working for GPO?

A: Yes. On April 14, 2003, I was reinstated into my position at my current grade. I eventually received back pay for my lost wages. However, I was never promoted. In addition, Mr. Dudley was assigned to another organization during February of 2003. I believe that management was aware that Mr. Dudley was engaged in inappropriate conduct and took action to address the situation.

Q: What relief are you seeking?

A: I would like a promotion of at least one grade which I had been promised by Mr. Dudley. I would like back pay for that promotion as well.


* See Attachment
Pag (4A) N.D.

4



November 24, 2003

Mr. Jonathan Kaufmann
Attorney at Law
4208 Evergreen Lane
Annandale, Va. 22003

      RE:    EEO Complaint
              Complaint Number GPO-03-21

Dear Mr. Kaufmann:

I have received and read the statements from the management officials in my case. I am providing you with my rebuttal comments, as requested in your letter to me of November 19, 2003.

1.     I take issues first of all to a statement made by Mr. Paul Kirby regarding me having a habit of visiting the 7th floor to the Congressional Records Office, when management told me not to do this. I visited the 7th floor office only once and when I was informed that this was against policy, I did not, I repeat, did not ignore the managements directives.

2.     In regards to the overtime issue, Mr. Kirby states that No employee receives information from Mr. Allgood regarding working overtime, however, five other employees, besides myself, who were told by Mr. Allgood to come into work overtime. Now, if Mr. Kirby nor Mr. Dudley told me to come in to work, and Mr Dudley called me and said I shouldn't report on February 1, 2003; then who did Mr. Dudley think told me to work in the first place? He sure didn't and neither did Mr. Kirby. How would he have known I was scheduled to work? If Mr. Allgood didn't have the authority to tell me to come in for overtime, then why would he assume such authority?

     Mr. Kirby stated that it was their plan to have employees on the later shift have an opportunity to have overtime, how could that be when persons from both shift worked? Why didn't Mr.Allgood know this? Why wasn't the Chain of Command exercised? Why didn't Mr. Logan, Mr. Kirby or Mr. Dudley give the command to schedule employees to work overtime? I feel that I was sent home because of my EEO involvement.

3.     Mr. Kirby himself states that the desk and chairs did not appear to be against GPO regulations, the problem was the location of the chairs and desks. When Mr. Kirby asked that we move the furniture to another location, that was immediately done. Mr, Kirby stated that I, Mr, Daniels had not only set up the desk and chairs to another work area, but, **Mr, Daniels,** had added more furniture. I was only one of the persons who set up the

*14*

furniture, but I was singled as being the only one to have done that. Since Mr. Dudley's instructions to move the furniture back to storage was followed, I am trying to understand why was I written up? I need clarity as to why Mr. Charles Henderson was allowed to have furniture, hot plate and a radio? Management knew about his salvaged materials. (Please see Mr. Henderson's affidavit) I have submitted to you a letter in my files regarding the Fire Marshalls Engineers Code of Regulations regarding Hot Plates and electrical appliances. These items are in violation of government policy, but were allowed by Mr. Dudley and are still present in the work area as we speak. Mr. Kirby was asked whether the Salvaged Material a part of the decision to terminate me, and he replied yes, that he and Mr. Dudley both agreed.

4.     Mr, Kirby also states that I had exhibited certain problems during my probationary period. It is noted that I displayed conduct in two instances that was inappropriate. If this be true, why wasn't my inappropriate conduct issues documented? Where were the write ups, prior to all of this? No documentations to me regarding all of the claimed visits to the 7th floor, I got written up for having salvaged materials, yet I did not do this alone. The issue with the overtime, I get written up and dismissed, yet the person who asked me to work goes unnoticed, even though it is said he had no authority to ask me to work.

5.     Mr. Kirby states that the paperwork was supposed to be issued to me on a certain day. I need to know what day? How would I know what day the paperwork was to be issued to me? He stated that I took off on that day, which delayed the termination process after the probationary. This in itself is not policy. If this be the case why was my letter dated February 21, 2003? If the paper work went through for my termination, even though I may have been on leave, the termination would have prevailed.

There are too many irregularities in Mr. Kirby's statements.

Continued Rebuttle:   Mr. Terrance Dudley

1. Mr. Dudley stated that he heard on December 19, 2002 Mr. Lancaster and I discussing the time of arrival of some employees, leave usage and time card of another employee, about someone else's time card, as well as the person's payroll number. Of course this was not true. We were discussing my personal payroll number and no one else's. If this statement be true regarding Mr, Lancaster and myself, why did he personally say he wanted to see all of us, Mr. Lancaster, Mr. Woody, Mr. Shade, Mr. Hawkins and myself; but again, singled out Mr. Lancaster and me? Never called anyone else, Being a relatively new employee to GPO doesn't mean that I don't know work ethics, I know it is against regulations and inappropriate to discuss other employee's time cards, leave time etc. As a matured adult, Mr, Lancaster and I both know monitoring or discussing others time cards is inappropriate, Why didn't Mr, Dudley ask if he didn't understand. I disagree with him when he stated he did not speak to me in an aggressive or hostile manner,

2. Regarding issue # 2-- We have no knowledge of overtime being offered to employees on a rotating basis. We have no knowledge of first overtime being offered to employees who had not been offered overtime most recently. Yes, Mr. Dudley called my home on January 31, 2003 and informed me that the congressional records would not be run on Saturday, February 1, 2003 so there was no need for me to report to work on Saturday, 2/1/03. There was no mentioning to me of anything about any bumping etc. Never ever did he tell me not to report to work on Sunday, February 2, 2003. I am at a lost as to what he meant by "He received overtime assignments sometime the week before, (explanation needed), Again, whether or not Mr. Allgood had authority to offer overtime to me and five other employees, he did it.

   Mr, Dudley being the Chief of the Delivery Section, why was it necessary for him to tell me that Mr Allgood did not have authority to authorize overtime? Why wasn't Mr. Allgood told that.? When I was asked to leave, I asked if I could speak with Mr, Allgood before I left, and Mr, Dudley granted that request. There was no pasting of the floor, I was not hostile, I never asked him why did I have to go home, I never said I wasn't going anywhere, I never asked if I could stay and work. After speaking with Mr, Allgood, I left for home. All of my witnesses have attested to this truth in their affidavits. One of my witnesses, Mr. William Gross approached him after I left in my defense, if I was hostile or acted in any way contrary to that of a professional employee or of a matured man, Mr. Gross would not have questioned Mr, Dudley as to why I was being sent home.

3. Mr. Dudley states my proposed termination was not in retaliation for my EEO involvement, however, non of these problems existed until I filed a complaint, The files will speak to this. Mr. Dudley evaded the question concerning his proposal to terminate me after the salvage material incident.
I have no rebuttal against the affidavit of Mr, Lloyd Logan, because in my opinion, he spoke the truth.

-3-

There are a number of irregularities in the affidavit from the management team, and there are some areas where more clarity is needed from them. I was terminated without proper grounds. I am aware that there is a formal process before termination.

Please contact me if further information is needed.

Sincerely,

*Nathaniel Daniels*
Nathaniel Daniels

Gessner S. Shelton
NOTARY PUBLIC
Prince George's County, Maryland
My Commission Expires 9/01/04

11/26/03

CC:   Mrs. Juanita M. Flores, Chief Counseling and Complaints Processing Division

-4-

CITY OF:   Baltimore
STATE OF:  Maryland

I, Nathaniel Daniels, Jr., former Printing Plant Worker, KA-3502-1, Delivery Section, Production Department, U.S. Government Printing Office, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to pursue my complaint of discrimination against the U.S. Government Printing office.

For the record, I am 55 years old (12/22/47).

Up until my recent termination I was employed as a printing plant worker, KA-3502-1, in the Delivery Section, U.S. Government Printing office. I believe that I was discriminated against on the basis of my age, when I was not selected for the position of Printing Plant Worker, Motor Vehicle Operator, KA-5, advertised under vacancy announcement numbers 02-242 and 02-243. I believe I was a better candidate than at least 2 of the 4 selectees based on my knowledge, skills, and abilities. The fact that I was not selected leads me to believe that my age was a factor in the selection process. The following is to serve as my affidavit in rebuttal to any negative comments made by Mr. Dudley to justify not selecting me. I believe Mr. Dudley's reasons for not selecting me are pretext for discrimination.

I began working in the Delivery Section of the U.S. Government Printing Office in February 2002, as a Printing Plant Worker. I was responsible for helping load and unload trucks, and delivering printed materials to various stops in and around Washington D.C. After loading the truck, I would ride in the truck to the delivery point and then unload the truck. To my knowledge there were never any problems with my job

Page 1 of 5 pages              Exhibit 9 p. 1-5              Affiant's Initials ND

performance. I believe my performance was considered outstanding. In fact, I even received a within grade increase in September 2002.

In September 2002, the vacancies were posted for Motor Vehicle Operator. I submitted my application for each vacancy and subsequently made the list of referred candidates. I was interviewed for the job by Mr. Terence Dudley and Mr. Paul Kirby, Chief and Assistant Chief respectively of the delivery section.

I thought the interview went quite well. I was able to answer all questions I was asked during the interview. The questions concerned my past work experiences, why I thought I was the best candidate for the job, to give an example of how I contributed to my current job, how I used good judgment while driving a commercial vehicle, along with some other questions.

The reason I felt confident about being selected was because of my knowledge, skills, and experience. First of all I had previous experience driving a commercial vehicle. I also had experience working in the delivery section. From helping on the trucks I knew what the job required. I was getting to know why our customers and the routes used to deliver to the customers. I was a productive employee as evidenced by my performance and was also very dependable. I had no attendance or lateness problems while working at the U.S. Government Printing office.

I was very shocked and surprised when I was told that I was not selected for the job. I know I was better qualified that least 2 of the selected candidate, Mr. Williams and Ms. McMillan.

Mr. Williams was much younger than me only worked in the Delivery Section about 2 or 3 months when selected. Mr. Williams made a statement to a co-worker, Mr.

Lancaster, several weeks before the selection was made, in which he stated that he was positive he would get one of the grade 5 truck driver jobs. I believe he was promised a job before it was posted. I believe the main reason he was selected was because of his age.

The other candidate, Ms. McMillan, was not even working in the section of the time for selection. She is working in the Industrial Cleaning Unit. I believe she may have been an ex-girlfriend of Mr. Dudley. I know I was much better qualified than Ms. McMillan.

Another reason why I believe age was a factor in the selection process concerns a negative comment Mr. Dudley made in front of myself and several co-workers about older employees. One day, several months prior to the vacancy being posted, I heard Mr. Dudley comment out loud that the section would be better off after the old people retired or left. In thinking back about this, there's no reason why I was not selected for the job.

Mr. Dudley and Mr. Kirby cannot provide a legitimate reason why they did not select me for the job. Their comments to the investigator that I was late for the interview are an out right lie. The fact is I was working that day and had absolutely no advance knowledge that I was being interviewed. When I got back from the delivery, I was told at the end of my shift that I was going to be interviewed. Thus management using that as an excuse for not selecting me is definitely a pretext for age discrimination.

It's also been added that I was told that this was the first time management interviewed candidates for tractor positions. Normally they would just make the selection. I believe they interviewed candidates so they would have an excuse as to why I was not selected.

Exhibit 9 p. 4    Affiant's Initials

In summary, I have no doubt that I was better qualified than the least 2 of the younger, selected candidates. I believe Mr. Dudley's negative comment about older employees shows he had a bias against me because my age.

As corrective action, I am seeking immediate reemployment as a truck driver, with full back pay and benefits. I want Mr. Dudley and Mr. Kirby removed from my supervisory chain and I would like to receive compensatory damages for the discrimination I was subjected to by both management officials.

Page 4 of 5 pages    Exhibit 9 p. 4    Affiant's Initials

I have read the above statement, consisting of 5 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

*Nathaniel Daniels Jr.*
Signature

April 2, 2003
Date

*[Investigator's Signature]*
Investigator's Signature

*[Notary Signature]*
my Com exp 2-13-06

Page 5 of 5 pages       Exhibit 9 p. 5       Affiant's Initials ND