```
*******************************
                              *
NATHANIEL DANIELS, JR         *
     Complainant              *
          vs.                 *      GPO-03-21
                              *
GOVERNMENT                    *
PRINTING OFFICE               *
     Defendant                *
*******************************
```

## AFFIDAVIT OF WALTER LANCASTER

The accepted issue in this case is as follows:

Was the Complainant discriminated against because of his age (55) and subjected to reprisal actions because of his prior involvement in the EEO process when he was allegedly (1) singled out and questioned by his supervisor on December 19, 2002 regarding a discussion that was taking place near the time clock, (2) sent home even though he had been scheduled to work overtime on February 1 and 2, 2003, and (3) on or about February 5, 2003, he was written up and subsequently terminated during his probationary period for moving salvage material?

Q: What is your age?

A: My age is 37 years old.

Q: How long have you worked for the Government Printing Office (GPO)?

A: For 10 or 11 years.

Q: What is your current position with GPO?

A: I am a Fork Lift Operator PPW, Grade 5 working in the Delivery Section.

Q: Are you familiar with the Complainant, Nathaniel Daniels?

A: Yes. Mr. Daniels began working in the Delivery Section as a Helper in 2002. I observed on numerous occasions that Mr. Daniels was an excellent employee who was extremely reliable and motivated.

Q: Can you explain what you observed regarding Mr. Daniels= interaction with management officials?

A:  Yes. First of all, I need to explain how management officials have operated within the Delivery Section. Until several months ago, Terrance Dudley was the Chief of the Delivery Section. The other management officials in the office were Paul Kirby the Assistant Chief of the Delivery Section and Lloyd Logan a first line supervisor who recently retired, and Gerald Simms the work leader on the 5 a.m. shift. These management officials are very close and support each other with respect to dealing with the staff.

In addition, they have exhibited a pattern of retaliatory behavior towards employees who assert their rights (such as filing EEO complaints). In my case, in May of 2001 I filed an EEO complaint when I was not selected for a particular position. Immediately, these management officials began treating me adversely. I was continually receiving write-ups for alleged misconduct on my part that was completely made up and unsupportable. Upon receiving this treatment, I filed another EEO complaint in January of 2002. This did not curtail management at all from continuing to treat me adversely. If anything, they harassed and retaliated against me further.

I believe that the problems I was having with management led to Mr. Daniels= difficulties.

Q:  Could you please explain what you mean?

A:  On or about July 19, 2002, Mr. Simms accused me of cursing at him. I did not. In discussions with management, Mr. Daniels was brought in to provide his own account of what had taken place between Mr. Simms and I. Mr. Daniels, answering truthfully, stated that he did not hear me curse at Mr. Simms on July 19, 2002. I believe that, based on this, management assumed that Mr. Daniels was favorably disposed towards me. Mr. Daniels was denied a PPW grade 5 promotion and I feel he was one of the best candiates for the job. Because I was an individual who had opposed management, they began to retaliate against Mr. Daniels for his association with me. When Mr. Daniels did not lie for Mr. Dudley where the incident of July 19, 2002 was concerned was the begining of Mr. Daniels demise. As a result, I observed that he began being treated in a less friendly manner than had been the case in the past. For example, no longer did management officials say hello to him when he came to work in the morning.

Q:  Could you please address circumstances surrounding the three accepted issues?

A:  Yes. With regard to the first issue, I recall that on December 19, 2002, I was in the Delivery Section at five in the morning (my starting time). Mr. Daniels was also present at work. I had the feeling that Mr. Dudley who ordinarily comes in later was around but he did not make his presence known. I reported the incident as well to the EEO office the next day.

Early that morning, Mr. Daniels approached me and asked me about his employee ID number. I told him that that number could be found on the time cards and was on his pay stub and this is how GPO Identifies you. Consequently, I showed him where the numbers were on the time cards outside of Mr. Dudley's office. At this time I did not know Mr. Dudley was in his office listening to our conversation because the blinds were drawn and the lights in Mr. Dudleys' office were off. Mr. Daniels thanked me and that was the end of the conversation.

At 5:35 a.m., Mr. Dudley appeared on the main platform stating that he had been here since 4'o clock listening to our conversations. Mr. Dudley pointed at three of our co-workers, John Hawkins, Howard Shade, and Ronald Woody and stated that he wanted to talk you, you and you referring to Mr. Woody, Mr. Hawkins and Mr. Shade. Mr. Dudley then stated that he wanted to talk to me first and than Mr. Daniels. Mr. Dudley initially stated that he wanted to speak to everyone, but Mr. Dudley only called Mr. Daniels and me in the office for the harassment. Mr. Dudley called me into his office first. Mr. Dudley took a very aggressive tone with me and ask me what was my motive for coming into the office and obtaining a 3/5 card. I told Mr. Dudley that I often write down things to do concerning my children for the day. Mr. Dudley told me that he wanted me to stop "instigating" things. I asked him what he was talking about and I told him that I was not instigating anything. He stated that he had observed Mr. Daniels and I talking by the time clock. I told Mr. Dudley what had transpired in that conversation. I was extremely respectful in my responses to Mr. Dudley. Despite this, Mr. Dudley continued to treat me in an offensive manner. Eventually, I demanded that Mr. Dudley specify if he was charging me something. I stated to Mr. Dudley "what are you charging me with." He said, "nothing." When Mr. Dudley stated that he was not charging me with anything, I told him that I was going to leave the office and that is what I did.

Thereafter, I observed that he called Mr. Daniels into the office. I would note, however, that Mr. Dudley did not call in Mr. Shade, Mr. Woody, or Mr. Hawkins. I believe that Mr. Daniels was singled out for this treatment because he filed an EEO complaint, and had declined to support Mr. Simms claim that I had cursed him out in July19, 2002. Mr. Dudley only called Mr. Daniels and me into his office for this harassing treatment. Mr. Dudley harassed us I believe because we have both filed EEO complaints against Mr. Dudley and his mangement team.

Q: With regard to the second issue, please tell me what you know about this allegation?

A: A number of staff members were scheduled to work overtime on February 1, 2003 and on February 2, 2003. I was at work both days. We were dealing with the delivery and breaking down of the Federal Budget which was due out. Jerome Allgood, Work Leader, told Mr. Bryan Martin

Haynes, Mr. Larry Long, Mr. Howard Shade, Mr. Daniels, and me that we were all working both days. when Mr. allgood made this announcement we were all in the back platform area. Mr Jerome Allgood told Mr. Daniels that Mr. Daniels would be working with him also on Sunday and that he should report to work at 6 a.m. Mr. jerome Allgood specifically told me that I was working. No manergerial official told me I was working Mr. Jerome Allgood told me. On Friday, January 31, 2003, Mr. Kirby called me at home to see if I had Mr. Daniels telephone number, Mr. Kirby was trying to reach Mr. Daniels to tell him not to come in on Saturday February 1, 2003, because the congressional record was not going to be delivered on Saturday. I would note, however, that a PPW Grade-7 truck driver, Mr. Charles Henderson, came into work on Saturday February 1, 2003. Even though the work day was sheduled for the platform crew not truck drivers, he was allowed to stay for the full shift and earned overtime pay. Mr. Dudley who was also there and did not send Mr. Henderson home, in fact he allowed Mr. Henderson to stay, and only platform workers were supposed to be there on Saturday February 1, 2003.

On February 2, 2003, Mr. Daniels came into work as he was scheduled to do. I observed that he was performing his duties. All of a sudden, Mr. Dudley apparently told Mr. Daniels that Mr. Daniels immediately had to leave work. I did not understand why this was happening. We had work that needed to be delivered and a Grade 7 PPW truck driver and a helper would be needed. Based on my understanding of the labor contract, management was supposed to offer this overtime work to the lowest grade first. This would have included Mr. Daniels. Instead, he was sent home when he should have been allowed to work.

I observed some of the PPW Grade 5 truck drivers that reported to work on Sunday February 2, 2003 worked in Mr. daniels place as helpers. These employees actually went out with Grade 7 truck drivers to deliver the various items that needed to be sent on Sunday February 2, 2003, Mr. Daniels should not have been sent home by Mr. Dudley. As I noted above this was contrary to the labor management agreement that should have allowed Mr. Daniels to have first chance to perform duties as a helper, because he is a grade 1 PPW.

William Gross, a former Union Representative, approach me when he observed that Mr. Daniels was sent home by Mr. Dudley. Mr. Gross asked me if I was going to talk to management on Daniels behalf. I noted that I was already dealing with management with my own EEO complaints, and was not sure that I would be effective. Accordingly, Mr. Gross stated that he would talk to Mr. Dudley. I observed that Mr. Gross confronted Mr. Dudley about the sending of Mr. daniels home, when Mr. Daniels should have been able to stay and earn overtime pay. I heard Mr. Dudley tell Mr. Gross to stay out of it Gross and that it was none of his business. Once again, I believe that management was retaliating against Mr. Daniels for his own EEO activity as well as their perception that he was involved in

mine, or associated with me.

Q: What do you know with respect to the third issue?

A: I was also involved in this as well. In the Delivery Section area, Mr. Henderson had set up a series of chairs and a desk, as well as, other government unauthorized items for his personal use. He also had a hot plate and would cook food on the back plat form with no ventalation which is a safety hazard. Mr. henderson also did not have a permit for the usage of his hotplate and electrical radio. Management had never complained about this situation. Mr. Dudley and Mr Kirby knew Mr. henderson had his items in his area and never did or said anything to Mr. Henderson.

Mr. Daniels observed the situation and learned that we could obtain some desks and chairs that we could also use in the back area. Consequently, I and several other employees helped Mr. Daniels move a desk and some chairs into the back area by the back elevator, initially. Mr. Kirby observed this and said it was acceptable, but that we needed to relocate and move the desk and chairs away from the elevator. We did this.

Later on, Mr. Dudley observed Mr. Daniels attempt to set up a private area of his own. When he learned that Mr. Daniels had been involved with the set up Mr. Dudley he immediately began to secretly write Mr. Daniels up. Using his friends or connections in the Employee Relations office Sherri Parker and Mrs. Lue Anne Green. I believe Ms. Sherri Parker and Mrs. Lue Anne Green, both who work in the Employee Relations office, push paper work through the system for Mr, Dudley. On February 6, 2003 Mr. Daniels, Mr. Woody, Mr. Shade and I asked Mr. Dudley why would could not have the little set up. Mr. Dudley responded that he was the cheif of the delivery section and he was giving us a direct order to take the materials out of the section. We complied with his request. Nevertheless, this led Mr. Dudley to terminate Mr. Daniels who was still a probationary employee. Mr. Dudley never called me into his office to notify me that he was writing me up as well for the incident. Mr. Kirby informed me in the presence of Mrs. Monique Evans the Union A Shop Steward for the section that Ms. Sherri parker from the Employee Relations office called him and said he had to write Mr. Woody, Mr. Shade, me up because Mr. daniels was written up. I requested a meeting with Mr. Jeff Bernazoli and my request was denied. When Mr. Dudley gave us a direct order to remove the materials on February 6, 2003 I did not feel I deserved a reprimand. On my reprimand the date of the incident was February 5, 2003 and we moved the materials outof the section the next day. Ms. Sherri Parker of the Employee Relations office initiated my write up and she does not work in the delivery section. We both objected to the situation noting that Mr. Henderson had been allowed to engage in the same conduct for several years and was never reprimanded. Mr. Dudley persisted with his actions and terminated Mr. Daniels employment at the Government Printing Office.

      Thereafter, we learned that Mr. Dudley had been reassigned to a different office on February 7, 2003. Mr. Daniels was terminated by the actions of Mr. Dudley and the Employee Relations Office. In addition, after approximately 34 days after being terminated from the Government Printing Office, Mr. Daniels was brought back to work and continued to work in the delivery section.

      I would note that since Mr. Dudley has left the delivery section, I have not been subjected to any type of disciplinary action or called in the office unnecessarily for harasment. The delivery section is better off without a managerial orfical like Mr. Dudley. I would note, however, that there are still management officials who are friendly with Mr. Dudley and I believe still are carrying out his wishes. For, example Mr. Woody brought a refrigerator from our GPO warehouse. I assisted Mr. Woody by taking the refrigerator off of the truck because our section needed a refrigerator. The next day Mr. Dudley showed up on the platform and the refrigerator had to be taken back to the warehouse. Mr. Dudley does not work in the section any more but controls Mr. Kirby to the degree that Mr. Kirby would not fill out the necessary paper work so that the section could have a refrigerator.

Q:     Mr. Daniels also alleges that age discrimination played a role in these actions. Please comment?

A:     I believe that this may be the case as well. I can recall at least one instance in which Mr. Dudley made a comment that he could not wait until the old people were out of the section because the section would be much better off. I do not precisely recall when Mr. Dudley made this comment. I believe it reflects his attitude toward older employees. Accordingly, I believe that Mr. Daniels was treated unfairly because of his EEO activity and his age. 4 Grade-5 positions became vacant and Mr. Dudley selected two younger employees that I feel were not as qualified as Mr. Daniels.

Q:     Do you have anything further to add?

A:     No.

## CERTIFICATION

I, Walter Lancaster, have read the above transcribed verbatim statement, consisting of 6 pages, it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or

imprisoned not more than 5 years, or both.

The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination. As a routine use, this information may be disclosed to persons involved in the processing and/or adjudication of this complaint; to the Equal Employment Opportunity Commission or to the Merit Systems Protection Board, as appropriate, to adjudicate complaints of alleged discrimination; to a court, party or counsel for a party in judicial or administrative litigation; to a congressional office at your request; to a labor organization as may be required by the NLRA. Provision of the information requested is mandatory for the complainant, GPO employees and other federal employee witnesses. Failure of the GPO or other federal employees to provide the requested information could result in disciplinary action.

I declare under penalty of perjury that the foregoing is true and correct.

*Walter W. Lancaster III*
Walter Lancaster

Dated: 10-20-03

Gessner S. Shelton
NOTARY PUBLIC
Prince George's County, Maryland
My Commission Expires 9/01/04

Affirmation by:
Jonathan E. Kaufmann

CITY OF:    Washington, D.C.

I, Walter Lancaster, III, Forklift Operator KA-5, Delivery Section, Production Department, U.S. Government Printing Office, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to answer the complaint of discrimination by Nathanial Daniels, Jr.

For the record, I am 36 years old (6/14/66).

I have worked at GPO about 14 years, about 10 of which have been in the Delivery Section.

I have absolutely no doubt that Mr. Dudley discriminated against Mr. Daniels because of his age when he refused to select him for a truck driver position last year. From working with Mr. Daniels I thought he was an outstanding employee. He was by far the best grade 1 helper in the section I have ever worked with. He was a very hard worker and also very dependable. Even though he commuted from Baltimore he was always at work on time. His dependability was without question. He is also very personable and friendly. He always had a smile and a kind word for everyone.

As a helper on the delivery truck Mr. Daniels was getting valuable on-the-job training for being a truck driver. He was learning about what needed to be delivered and where work needed to be delivered to. He was also becoming familiar with the various customers and the routes he would need to drive.

Management's attitude toward Mr. Daniels changed after an incident that took place between me and Mr. Simms on July 19, 2002, Mr. Simms is the Work Leader on our shift. Mr. Simms accused me of cursing at him, which I did not do. Mr. Simms tried to get Mr. Daniels and other employees on our shift to say that he heard me curse him.

Exhibit 12 p. 1=3

When Mr. Daniels refused to say he heard me curse Mr. Simms, management had a different attitude towards Mr. Daniels. I believe management began to "blackball" Mr. Daniels. They stopped speaking to Mr. daniels although Mr.Daniels because of his personality did not stop speaking to them.

I believe management to discriminate against Mr. Daniels because of his age when they did not select him for 1 of the 4 truck driver positions they filled last year. Based on his loyalty, dependability, and productivity I believe Mr. Daniels was an outstanding candidate, more so than at least 2 of the selectees. One selectee, Mrs. McMillan, did not even work in the section. She came over from the Industrial Cleaning Unit, where she cleaned bath rooms. One of the other selectees, Mr. Williams, had only worked in the section two to three months when he was chosen over Mr. Daniels. Mr. Daniels with out a doubt had more time in the section and more experience in the section, than did Mr. Williams and Mrs. McMillan. Something else was curious about Mr. Williams's selection. Weeks before the selections were made Mr. Williams, told me that he knew he was going to be promoted into one of the vacancies. While it is not unusual for someone to feel self assured about being selected for a position; Mr. Williams stated to me that "he did not want to play himself out of the box." He knew he was going to get one of the vacancies, almost as though he had been promised one of the positions. In the delivery section promotion of employees based on their merit does not exist. Promotion is based upon favoritism and personal friendships. Mr. Williams and Mrs. McMillan are both younger employees than Mr. Daniels, and age discrimination definitely should apply.

Another reason why I believe age was a factor in the selection process is a comment I heard Mr. Dudley make on one occasion. I heard Mr. Dudley comment that he

Exhibit __12__ p. __2__

could not wait until all of the old people get out of here (referring to the delivery section), or something to that effect, that the section would be better off when the old people are gone. Thus, I do believe Mr. Dudley would not hesitate in by passing, for selection a well qualified older employee such as Mr. Daniels.

    I have read the above statement, consisting of 3 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

*Walter W. Lancaster III*
Signature

April 3, 2003
Date

_____
Investigator's Signature

CHARLES F. MURRAY
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 1, 2006

4/3/03

Exhibit 12 p. 3