CITY OF:   Washington, D.C.

I, Terrance Dudley, Chief, PG-12, Transportation operations, Production Department, U.S. Government Printing Office, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to answer the complaint of discrimination by Nathanial Daniels, Jr.

For the record, I am 35 years old (10/967).

I have been advised that I am an official alleged to be responsible for the actions giving rise to this complaint, and I understand the allegations made by Mr. Daniels.

    I have been in my current position about one month. Prior to becoming Chief, Transportation Operations, I was Chief, Delivery Section, and as such I was Mr. Daniels third level supervisor. I along with Paul Kirby, Assistant Chief, Delivery Section, served as selecting officials for the position of Motor Vehicle Operator, KA-5703-5, advertised under vacancy announcement numbers 02-242 and 02-243. I selected two candidates, one from each vacancy announcement, and Mr. Kirby selected the two other candidates. At no time did I consider Mr. Daniels' age during the selection process. I chose the two candidates who I felt could best do the job based on their experience.

    In looking for candidates I wanted someone who had previous truck driving experience and was familiar with the Washington D.C. area. I wanted someone who knew their way around the streets of Washington. I was also looking for a candidate who was dependable and who came to work on time. The candidate also needed some communication skills, both oral and written, since the job required the selectee to interact with customers and prepare manifests.

There were about ten to twelve applicants referred to us for consideration for the two vacancies. All the candidates were interviewed and asked the same questions. Candidates were asked to describe the duties of their current job, why they applied for the job, why they felt they were the best candidates, how they would handle a confrontation with a co-worker, and several others.

I had a number of concerns with Mr. Daniels' candidacy for the job. First of all Mr. Daniels arrived late for the job interview, which was not a good sign. I also felt that Mr. Daniels did not answer the interview questions as well as some of the other candidates. I can no longer recollect what the specific questions were of the interview, nor do I recall the specific the answers. The notes we took have since been destroyed.

I selected Lamar Gamble and DeShawn McMillan for two of the four vacancies. Mr. Gamble had experience as a Motor Vehicle Operator and was quite familiar with the Washington area. His interview went well and he had experience working in the Delivery Section. He worked in the section a little longer than Mr. Daniels. He worked as a helper on the trucks and was familiar with most destinations and delivers that had to be done. He was also learning the truck routes and was becoming familiar with our customers. I believe Mr. Gambel was around the same age as Mr. Daniels when I selected him for the job.

Concerning the other candidate I selected, Ms. McMillan, she also did very well during the interview. She also had previous experience as a truck driver having worked for a local delivery service. She knew the Washington area quite well and had experience interacting with customers. I felt her overall experience made her a better candidate, even though she was working in Industrial Cleaning at the time she applied for the job.

Regarding Mr. Daniels' allegation that he heard me make a negative comment about older employees by stating that I would be happy when all of the old people left the unit or the section would be better off without old employees; I steadfastly deny ever making such a comment to Mr. Daniels or anyone else. I have never made a disparaging remark about any employee's age. If Mr. Daniels or any other employees claim they heard me make a derogatory comment about older employees, the individual is lying.

In summary, I selected the two people who I felt could best perform the duties of the job based on their knowledge, skills, and experience. At no time did I consider any candidate's age in the selection process.

    I have read the above statement, consisting of 4 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_Lenance Dudley_
Signature

_April 8, 2003_
Date

_[signature]_
Investigator's Signature

```
******************************
                              *
NATHANIEL DANIELS, JR         *
     Complainant              *
          vs.                 *          GPO-03-21
                              *
GOVERNMENT                    *
PRINTING OFFICE               *
     Defendant                *
******************************
```

### AFFIDAVIT OF TERRANCE DUDLEY

The accepted issue in this case is as follows:

Was the Complainant discriminated against because of his age (55) and subjected to reprisal actions because of his prior involvement in the EEO process when he was allegedly (1) singled out and questioned by his supervisor on December 19, 2002 regarding a discussion that was taking place near the time clock, (2) sent home even though he had been scheduled to work overtime on February 1 and 2, 2003, and (3) on or about February 5, 2003, he was written up and subsequently terminated during his probationary period for moving salvage material?

Q: What is your current position with GPO?

A: Chief of Transportation Operations.

Q: How long have you been in that position?

A: I assumed that position on February 10, 2003. Prior to that I was the Chief of the Delivery Section.

Q: What is your date of birth?

A: October 9, 1967.

Q: What is your working relationship with Nathaniel Daniels, the Complainant?

A: Mr. Daniels works in the Delivery Section. When I was the Chief of the Delivery Section, Mr. Daniels served as a helper to the truck drivers. I did not directly supervise him. He was several supervisory levels below me.

Q: What was your work experience with Mr. Daniels?

1

6

A:    I served as Mr. Daniels Supervisor from the date of his hire until February 10, 2003.

Q:    Mr. Daniels alleges, with respect to Issue 1, that you came into the office earlier than usual on December 19, 2002 and did not let other employees know you were in. He further alleged that you came out into the work area and directed that he (Mr. Daniels) and several other co-workers including Walter Lancaster had been overheard making comments that you thought were problematic and that each of them would have to talk to you. Thereafter, he alleged that you brought him into your office and treated him in an aggressive and hostile manner. Could you please comment regarding this incident?

A:    I did come to work early on December 19, 2003 morning to complete some reports. However, in no way was I trying to hide my presence from other employees in the office. What I heard was the Complainant and Walter Lancaster discussing the time of arrival of some employees, leave usage and time card of another employee. During that discussion, they began talking about the employee's payroll number. I felt this was completely inappropriate because such information is confidential.

Accordingly, I came out of my office and directed first Mr. Lancaster and then Mr. Daniels to come into my office to discuss the situation. I explained to both Mr. Daniels and Mr. Lancaster that discussing monitoring other employees time and attendance was not relevant to their job. I was not certain that Mr. Daniels relatively being a new employee understood how important it was to maintain the confidentiality of an employee's personal information. I did not speak to him in an aggressive or hostile manner.

Q:    With regard to the second Issue, Mr. Daniels alleged that he had been told by Jerome Allgood, team leader, that he was to come in on both Saturday February 1 and Sunday 2, 2003 to work overtime. Mr. Daniels claimed that overtime work was cancelled for February 1 but he came in on February 2, 2003, as he was scheduled to do. Mr. Daniels then claimed that you wrongly told him to leave work and not receive overtime. Please comment?

A:    We offer overtime to individuals on a rotating basis. We would first offer overtime to those who had not been offered it most recently. I personally contacted Mr. Daniels and others on Friday January 31, 2003 to inform them of the change in schedule and not to report because some employees had been bumped due to Saturday cancellation of overtime. In this case of the weekend of February 2, 2003, Mr. Daniels was not supposed to be working overtime on Sunday. He had previously received overtime assignments sometime the week before. In addition, Mr. Allgood was not authorized to offer Mr. Daniels overtime.

When I observed that Mr. Daniels reported to work on Sunday, February 2, 2003, I immediately approached him. I asked why he was here at work. He stated that Mr.

2

Allgood had told him to come in. I informed him that Mr. Allgood did not have the authority to authorize overtime. I asked Mr. Allgood if he had authorized Mr. Daniels to come in and he stated, No. I told Mr. Daniels he had to leave. Mr. Daniels began to paste the floor in a hostile manner. He stated why do he have to go home and I stated that you were previously informed by me not to come in. Mr. Daniels told me that he was not going to go anywhere and then he asked whether he could stay and work. I again told him that he was not scheduled to come to work and that he had to leave. Eventually he went home.

Q: A number of witnesses claimed that the labor-management contract covering truck drivers required management to offer overtime work to the lowest graded employees first. Is this accurate?

A: No. That is not the way we do overtime. As I explained, we offer overtime in a fair and equitable manner rotating it among all employees.

Q: With regard to the third issue, Mr. Daniels alleged that he and some co-workers had put some desks and chairs in an area where they could sit. He stated that this was an arrangement similar to that of another driver, Charles Henderson. He stated that one of the supervisors, Mr. Kirby, observed the arrangement and told him to move it but did not state that he could not have it. Thereafter, he alleged that you told him to move all the desks and that he did this. Immediately after that, he alleged that you proposed to terminate him. Could you explain what happened?

A: Mr. Daniels proposed termination was not in retaliation for his previous complaint activity. The circumstances surrounding his termination are best noted in the agencies record. The agency record can be obtained by contacting the Government Printing Office of Labor & Employee Relations & Programs Division.

Q: Were you aware that Mr. Daniels had filed a prior EEO complaint?

A: Yes.

Q: Did this or Mr. Daniels age play a role in your decision?

A: No.

Q: Do you have anything further to add?

A: No.

3

## CERTIFICATION

I, Terrance Dudley, have read the above transcribed verbatim statement, consisting of 5 pages, it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or imprisoned not more than 5 years, or both.

The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination. As a routine use, this information may be disclosed to persons involved in the processing and/or adjudication of this complaint; to the Equal Employment Opportunity Commission or to the Merit Systems Protection Board, as appropriate, to adjudicate complaints of alleged discrimination; to a court, party or counsel for a party in judicial or administrative litigation; to a congressional office at your request; to a labor organization as may be required by the NLRA. Provision of the information requested is mandatory for the complainant, GPO employees and other federal employee witnesses. Failure of the GPO or other federal employees to provide the requested information could result in disciplinary action.

I declare under penalty of perjury that the foregoing is true and correct.

*Terrance Dudley* (signature)
Terrance Dudley

Dated: November 17, 2003
Affirmation by:

4