UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **NATHANIEL DANIELS,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-2455 (GK) |
| **ROBERT C. TAPELLA,**[1] **Public Printer, U.S. Government Printing Office,** | ) ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION

Plaintiff Nathaniel Daniels, an employee of the Government Printing Office ("GPO"), brings this action against Robert C. Tapella in his official capacity as Public Printer. Plaintiff alleges gender discrimination in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e, et seq. (Count I); retaliation (Count II); age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. § 621 et seq. (Count III); and intentional infliction of emotional distress resulting from the alleged violations of these statutes (Count IV). This matter is before the Court on Defendant's Motion for Summary Judgment [**Dkt. No. 19**]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Public Printer Robert C. Tapella is automatically substituted as defendant for former Public Printer Bruce James.

the reasons set forth below, Defendant's Motion for Summary Judgment is **granted** as to Counts I and II and **denied** as to Counts III and IV.

I.   **BACKGROUND**[2]

On February 25, 2002, the GPO hired Plaintiff, a fifty-five year old male, as a Grade 1 Printing Plant Worker in the Delivery Section of its Production Department.  He was hired subject to a one-year probationary period that was to conclude on February 24, 2003.  His work responsibilities included unloading delivery vehicles and carrying materials to drop-off points.

On August 30, 2002, GPO posted vacancy announcements for four Grade 5 Motor Vehicle Operator positions.  The positions involved driving, loading, and unloading light delivery trucks that delivered printed materials throughout the greater Washington, D.C. area.  Plaintiff applied for one of the positions, and although he had a total of five years of experience driving a mail truck for the United States Postal Service and a delivery van for Bayview Hospital, both in Baltimore, he was not selected.  In October 0f 2002, Terrence Dudley, the Chief of the Delivery Section selected two candidates for the four open positions: a fifty-six year old male candidate and a thirty-one year old female candidate.  During

---

[2] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the Defendant's Statement of Material Facts Not in Dispute submitted pursuant to Local Civil Rule 7(h) or from the Complaint.

the same time frame, Paul Kirby, Dudley's Deputy, selected candidates for the two remaining vacancies: a thirty-year old male candidate and a forty-year old male candidate who were supposedly selected for their prior experience driving delivery vehicles.

On December 19, 2002, Plaintiff claimed that he was singled out by Dudley for conversing with a co-worker who had filed a discrimination complaint. Dudley called Plaintiff into his office and questioned him about the conversation in an extremely hostile tone of voice and informed him that as a probationary employee, he could be terminated.

Plaintiff filed a discrimination complaint with the agency on December 31, 2002, alleging that he was discriminated against on the basis of age when he was not selected for one of the open Motor Vehicle Operator positions. On April 29, 2003, Plaintiff filed another administrative complaint claiming that he had been retaliated against for past protected Equal Employment Opportunity ("EEO") activity.

Plaintiff was scheduled to work overtime on the weekend of February 1 and 2, 2003 delivering copies of the Congressional Record. On Friday, January 31, 2003, Dudley informed Plaintiff that it would not be necessary for him to report for work on Saturday, February 1. Although Plaintiff was only scheduled to work on Saturday, he nevertheless arrived at work on Sunday,

February 2 and insisted on working overtime. Dudley then ordered him to leave.

On February 4, 2003, Plaintiff set up office partitions and office furniture in the rear of a delivery platform for use as a break area. This action was not authorized by his supervisors and allegedly created a work hazard, as forklifts regularly operated in this area. On February 5, 2003, Dudley instructed Plaintiff's immediate supervisor, Gerald Simms, to order Plaintiff to remove the partitions. This instruction was conveyed to Plaintiff, who failed to dismantle the partitions. Dudley then directly instructed Plaintiff to remove the partitions, which he agreed to do.

On the morning of February 6, 2003, Dudley noted that the partitions had not yet been removed. Plaintiff and three other employees requested permission to keep the partitions in place, which Dudley denied. Only after a further direction from Dudley, one of the employees did dismantle the partitions.

As a result of this incident, Dudley determined that Plaintiff's probationary employment status should be terminated. Robert Schwenk, Acting Production Manager, agreed and issued a letter on February 21, 2003 informing Plaintiff that he would be dismissed by the agency. Sometime after this letter was signed the Director of GPO's Office of Employee Relations and Programs noticed

that the letter erroneously made Plaintiff's removal effective on February 25, 2003, one day after his probationary period expired.

Accordingly, on April 9, 2003, she reinstated Plaintiff as a GPO employee, with backpay from February 25, 2003. Plaintiff was then given a verbal warning as alternative discipline for his role in the partition incident.

On November 18, 2005, GPO issued a Final Agency Decision finding that no discrimination had occurred. Plaintiff then filed suit in this Court on December 27, 2005.

## II. STANDARD OF REVIEW

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

In its most recent discussion of summary judgment, in <u>Scott v. Harris</u>, __ U.S. __, 127 S. Ct. 1769, 1776 (2007), the Supreme Court said,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 . . . (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Liberty Lobby</u>, 477 U.S. at 247-48.

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not...to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 248, 249. In both <u>Liberty Lobby</u> and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. <u>Liberty Lobby</u>, 477 U.S. at 255. In assessing a motion for summary judgment and reviewing the evidence the parties claim they will present, "the Court must draw all reasonable inferences in favor of the non-moving party." <u>Reeves</u>, 530 U.S. at 150. "To survive a motion for

summary judgment, the party bearing the burden of proof at trial...must provide evidence showing that there is a triable issue as to an element essential to that party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)." Arrington, 473 F.3d at 335.[3]

**III. ANALYSIS**

**A.  Plaintiff Has Failed to Exhaust His Administrative Remedies as to Count I (Gender Discrimination)**

"Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government, a court may not consider a discrimination claim that has not been exhausted." Steele v. Schafer, ___ F.3d ___, 2008 WL 2938553, at *3 (D.C. Cir. Aug. 1, 2008) (internal quotation marks omitted); 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  The exhaustion requirement is not meant as a "procedural roadblock" but instead "is intended to give the agency the opportunity to right any wrong it may have committed." McRae v. Librarian of Congress, 843 F.2d 1494, 1496 (D.C. Cir. 1988) (internal quotation marks omitted). Accordingly, "[a] plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience."  Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985) (internal quotation marks omitted).

---

[3] It should be noted that a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different. Greene v. Dalton, 164 F.3d 671, 674-75 (D.C. Cir. 1999); Arrington, 473 F.3d at 337.

Plaintiff filed two complaints of discrimination with the agency. In the first, submitted on December 31, 2002, Plaintiff alleged that he had been discriminated against on the basis of his age. Def.'s Ex. 19. In the second, submitted on April 29, 2003, Plaintiff claimed that he had been terminated because of his age and as "reprisal/retaliation because of my involvement in my earlier activity with the EEO process." Def.'s Ex. 14. Neither complaint alleged discrimination on the basis of gender. Therefore, Defendant is entitled to summary judgment on Count I.[4]

### B. Plaintiff Has Failed to Counter the Government's Arguments on Count II (Retaliation)

The Defendant advances a number of arguments concerning Plaintiff's retaliation claim. He contends that Plaintiff has failed to set forth a <u>prima facie</u> case of retaliation concerning the December 19, 2002 incident in Dudley's office; that there were legitimate, non-discriminatory reasons for why Plaintiff was denied overtime pay for February 1 and 2, 2003; and that Plaintiff's insubordination with regard to his failure to remove the partitions at the rear of the delivery platform justified the agency's

---

[4] Neither the Complaint nor the administrative complaints raise any claims of racial discrimination. Thus, no claims of discrimination on the basis of race could have been properly administratively exhausted.

The parties refer to a claim of hostile work environment in their briefing on the Motion. However, the Complaint contains no such claim.

decision to terminate his employment (although he was later reinstated).

While Plaintiff includes two paragraphs in his Opposition, neither one responds to any of the arguments Defendant makes in his Motion. It is well-settled that where a non-moving party fails to oppose arguments set forth in a motion for summary judgment, courts may treat such arguments as conceded. <u>Malik v. District of Columbia</u>, 538 F. Supp. 2d 50, 52-53 (D.D.C. 2008). Where, as here, "a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." <u>Id.</u> Given this lack of opposition, Defendant's Motion for Summary Judgment is **granted** as to Count II.

    **C.  There Is a Genuine Issue of Material Fact that Precludes Summary Judgment on Count III (Age Discrimination)**

Claims of age discrimination in violation of the Age Discrimination in Employment Act are governed by the burden-shifting framework laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Carter v. George Washington Univ.</u>, 387 F.3d 872, 878 (D.C. Cir. 2004).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a <u>prima facie</u> case of age discrimination. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. Once the plaintiff establishes a <u>prima facie</u> case, the defendant must "'produc[e] evidence' that the adverse employment actions were

9

taken 'for a legitimate, non-discriminatory reason.'" Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)). Once the defendant has done so, "the presumption...raised by the prima facie case is rebutted" and "drops from the case." Id. (quoting Hicks, 509 U.S. at 507). For purposes of surviving summary judgment, the plaintiff must show that a reasonable jury "could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." Id.

Our Court of Appeals recently held that, when considering a motion for summary judgment in an employment discrimination case, a district court need not consider whether a plaintiff has actually satisfied the elements of a prima facie case if the defendant has offered a legitimate, non-discriminatory reason for its actions. Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason" for the adverse employment actions, and that the employer's actions were discriminatory. Id.

To succeed in a claim brought under the ADEA, a plaintiff must prove that his age "actually motivated the employer's decision." Reeves, 530 U.S. at 141.  "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'"  Id. (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).  Thus, to survive summary judgment, Plaintiff must demonstrate the existence of a genuine issue of material fact concerning whether his age had "a determinative influence" on the agency's decision to select other candidates for the delivery driver positions.

Here, Defendant does not even dispute that Plaintiff has presented a prima facie case of age discrimination.  Instead, he argues that  Plaintiff was not chosen for the delivery driver positions because the other candidates had more delivery experience in the Washington, D.C. area.

A review of the record demonstrates ample evidence from which a jury could infer that Plaintiff was discriminated against on the basis of his age.  For example, according to a number of witnesses,[5] Dudley stated that his section would be better off without older employees.  See Aff. of Ronald Woody, Apr. 4, 2003, at 2 ("the section would be a lot better off as soon as he got rid of these old people"); Aff. of Walter Lancaster, Oct. 20, 2003, at

---

[5]   It is not clear whether these witnesses were referring to the same or different incidents.

11

6 ("I can recall at least one instance in which Mr. Dudley made a comment that he could not wait until the old people were out of the section because the section would be much better off."); Aff. of John Hawkins, Apr. 2, 2003, at 2 ("He will be glad when all you old guys leave the section.")  These statements are powerful evidence of discriminatory intent on the part of one of the two individuals ultimately responsible for hiring candidates for the delivery driver positions.[6]

There is also strong documentary evidence from which a jury could infer that the Defendant's explanation that the other candidates were better qualified was pretextual.[7]  A September 30, 2002, memorandum titled "Certification of Best Qualified Candidates" and addressed to the Chief of the Employment Branch, provides a numbered list of nine candidates for the delivery driver positions.  Pl.'s Opp'n, Ex. 2 at 1.  Plaintiff's name was listed third, ahead of two other candidates who were later selected for

---

[6] The Defendant argues that these statements constituted "stray remarks...unrelated to the decisional process itself," which do not constitute direct evidence of discrimination.  See Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 665 (D.D.C. 1997); see also Beeck v. Fed. Express Corp., 81 F. Supp. 2d 48, 53 (D.D.C. 2000); Brady v. Livingood, 456 F. Supp. 2d 1, 6 (D.D.C. 2006).  However, a plaintiff may also prove discrimination indirectly, "under the burden-shifting framework established in McDonnell Douglas," Kalekiristos, 958 F. Supp. at 665, as Plaintiff seeks to do in this case.  In any event, it is for a jury to decide, in the context of all the evidence presented, whether the remarks were "stray" or not.

[7] Plaintiff argues that he was better qualified than two of the younger applicants selected.

12

the four open driver positions.  Id.  A "Panel Rating Summary" lists scores for each applicant for factors such as "Supv'y Eval," "Educ/Training," and "Experience."  Id. at 2.  Plaintiff received the third highest total score, consistent with his listing as third in the "Certification of Best Qualified Candidates."  Id.  He received higher "Experience" scores than did two of the candidates who were eventually selected.  Id.  A similar memorandum dated October 1, 2002, also listed Plaintiff third and showed that Plaintiff had similarly received the third highest score of any candidate.  Id. at 3-4.

Plaintiff's five years of experience as a delivery driver in nearby Baltimore also calls into doubt the Defendant's explanation that he was unqualified when compared to the other candidates.  A jury may reasonably choose not to credit the Defendant's arguably flimsy explanation that the other candidates were better qualified because their delivery experience had instead been in the Washington, D.C. area.

Based on all this evidence, a jury could reasonably conclude that the agency's explanation that all the other candidates who were selected were better qualified was entirely pretextual and that the agency was instead engaged in intentional discrimination. See Reeves, 530 U.S. at 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the

13

[employer's] explanation that the employer is dissembling to cover up a discriminatory purpose.").

Together, this evidence provides ample grounds for a reasonable jury to find that Plaintiff was discriminated against on the basis of his age. For that reason, the Defendant's Motion is **denied** as to Count III.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [**Dkt. No. 19**] is **granted** as to Counts I and II and **denied** as to Counts III and IV.[8] An Order shall accompany this Memorandum Opinion.

August 18, 2008

/s/
Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF**

---

[8] The Defendant does not raise any arguments concerning Count IV.